CLYDE et al. v. RICHMOND & D. R. CO. et al.

CENTRAL TRUST CO. OF NEW YORK v. SAME.

Ex parte CHESTER & L. N. G. R. CO.

Ex parte HARDEN.

(Circuit Court, D. South Carolina. August 9, 1894.)

RAILROAD RECEIVERS—LEASED LINES—DIVERSION OF MONEY—TAXES.

Receivers who take possession of and operate leased lines for more than a year, and receive the earnings thereof, are bound to disburse the same in accordance with the terms of the lease; and where they apply such earnings to the payment of interest on the bonds, when the lease requires that the taxes shall be first paid, the court will require them, even after the leased roads have been surrendered, to restore the diverted money by paying the taxes in question.

These were petitions filed, respectively, by the Chester & Lenoir Narrow-Gauge Railroad Company and William Henry Harden, receiver of the Cheraw & Chester Narrow-Gauge Railroad Company, against the receivers appointed in the suits brought against the Richmond & Danville Railroad Company by William P. Clyde and others and by the Central Trust Company of New York. The object of the petitions was to require the said receivers to pay certain arrears of taxes upon the roads of the petitioners.

A. G. Brice, for Chester & L. N. G. R. Co.

J. S. Glenn, for Cheraw & C. N. G. R. Co.

H. L. Bond, Jr., for receivers.

SIMONTON, Circuit Judge. These two petitions, presenting similar facts and the same questions of law, were heard and will be decided together.

The Charlotte, Columbia & Augusta Railroad Company controlled a railroad having its termini in Charlotte, N. C., and Augusta, Ga. It passed through the town of Chester, S. C., and at that point met the two narrow-gauge railroads owned by the petitioners above named, respectively. On 22d September, 1882, a lease was executed by the Chester & Lenoir Narrow-Gauge Railroad Company to the Charlotte, Columbia & Augusta Railroad Company, of all its track, rolling stock, and property, for the term of 99 years. On 29th September of the same year a lease for the same period and for the same purpose was executed to the same lessee by the Cheraw & Chester Narrow-Gauge Railroad Company. The leases are identical in their terms. Under them, the Charlotte, Columbia & Augusta Railroad Company binds itself to pay a dividend of 1½ per cent. to the stockholders of the leasing companies, annually; to pay the coupons on the mortgage debt of each of them as they mature, to protect the principal of the mortgage debt; and, in case the earnings can pay all the current expenses, dividends, insurance, and debt, to divide the surplus among the stockholders of the leasing companies. Under the fourth covenant in each lease, the lessee "assumes to pay the floating indebtedness of the lessor," and all its valid obligations, of every kind and character, and also all unpaid state, county, and municipal taxes. These leases being in full force, and the lessee in possession thereunder, the Charlotte, Columbia & Augusta Railroad Company, on 1st May, 1886, executed to the Richmond & Danville Railroad Company a lease for 99 years of all its own main line, and also all the estate, etc., of the lessor in and to the railroad, etc., of the Chester & Lenoir Narrow-Gauge Railroad Company, and also of the Cheraw & Chester Narrow-Gauge Railroad Company, under these leases, respectively, and all the estate, etc., of every nature, in each and every of said main lines and their leased lines of road. The lease contains many covenants. Those bearing upon the issues now under consideration are third, fourth, and sixth. The third and fourth appropriate the whole of the receipts, income, and revenues derived or received from the use and operation of the said demised lines of railways and property in a definite and fixed

order, apparently settling the priorities of the objects appropriated for: First, the payment of current costs and expenses of maintaining, repairing, and perpetuating during the term, for public use, the said lines of railway; all liabilities growing out of the operation and management of the said lines of railway; premiums of insurance, "and all taxes, rates, charges, liens, and assessments, ordinary and extraordinary, which now are, or may at any time during the said demised term be, by the United States of America or by the states of South Carolina, Georgia, and North Carolina, or other competent authority, charged or unpaid on all or any part of said demised lines of railway." Then come provisions for the payment of interest on the several mortgages according to their relative rank, and for the disposition of a surplus.

In the sixth clause of the lease the lessee agrees to assume and perform all existing contracts of the lessor relating to the operation and traffic of the demised lines of railway, so far as it is lawfully bound or required to perform the same. Under this lease the Richmond & Danville Railroad Company entered upon all the lines of railway, including these two narrow-gauge roads, and received all the earnings of the whole system, performing the covenants in the lease. In June, 1892, under a bill filed by William P. Clyde and others, stockholders and creditors, against the Richmond & Danville Railroad Company, in the circuit court of the United States for the eastern district of Virginia, Reuben Foster and Frederick W. Huidekoper were appointed receivers of all the property of the Richmond & Danville system, and, as such receivers, entered into possession of all of it, including this lease of the Charlotte, Columbia & Augusta Railroad, and in auxiliary proceedings in this court this appointment was confirmed and recognized. Subsequently, the Central Trust Company of New York, representing mortgage creditors of the Richmond & Danville Railroad Company, instituted proceedings in the same court, in the eastern district of Virginia, against that company; and Reuben Foster, Frederick W. Huidekoper, and Samuel Spencer were appointed receivers of all the property, of every kind, of the Richmond & Danville Railroad Company, including this lease aforesaid, and on 1st August, 1893, entered into possession and control thereof. But on the same day proceedings for foreclosure were instituted in this court by the Central Trust Company of New York, on behalf of mortgage creditors of the Charlotte, Columbia & Augusta Railroad Company, against that company; and under these proceedings Samuel Spencer, Frederick W. Huidekoper, and Reuben Foster were appointed receivers of all the property of the Charlotte, Columbia & Augusta Railroad Company, except these leases of these two narrow-gauge railroads. As these mortgages bore date anterior to the lease, and were paramount thereto, these last-mentioned proceedings, in effect, abrogated the lease, and thenceforward the system of the Charlotte, Columbia & Augusta Railroad Company was separated; the receivers in the last-named case being in possession and control of the main line, representing mortgage creditors of the Charlotte, Columbia & Augusta Railroad Company, and the receivers appoint-

ed in the case of The Central Trust Company v. The Richmond & Danville Railroad Company holding the narrow-gauge roads for the owner of the one and the receiver of the other until December, 1893, when they formally released them,—the Chester & Lenoir Narrow-Gauge Railroad to its stockholders, and the Cheraw & Chester Narrow-Gauge Railroad to its receiver appointed by the state court.

It is well to recapitulate the dates. The leases of the narrow-gauge railroads to the Charlotte, Columbia & Augusta Railroad bore date September, 1882. The lease of the Charlotte, Columbia & Augusta Railroad Company, including its main line and these two narrow-gauge railroads, to the Richmond & Danville Railroad Company bore date May 1, 1886. The receivers under Clyde v. Richmond & Danville Railroad Company were appointed June, 1892, and administered the whole property, receiving all its earnings, until 1st August, 1893. On 1st August, 1893, the receivers in the case of The Central Trust Company of New York v. The Charlotte, Columbia & Augusta Railroad Company took charge of the main line, and not of the two leased narrow-gauge railroads. On 1st December, 1893, these two narrow-gauge roads passed out of the control of the receivers appointed in the case against the Richmond & Danville Railroad Company.

The petitions we are considering aver that there remain due and unpaid balances of taxes on these narrow-gauge railroads for the fiscal years 1890–91, 1891–92, and 1892–93, and they claim that under the terms of the lease the receivers of the Richmond & Danville Railroad Company are bound to pay these unpaid taxes.

When receivers are appointed for a line of railroad embracing leased lines, they do not necessarily assume the responsibility for the covenants of any of the leases, nor take the place of the lessees. They must have reasonable time within which to determine what they will do, and whether it is for the interest of the trusts committed to them to undertake the leases. United States Trust Co. v. Wabash W. Ry. Co., 150 U. S. 289, 14 Sup. Ct. 86; Railroad Co. v. Humphreys, 145 U. S. 82, 12 Sup. Ct. 787. But if the receiver, after a reasonable time, continues to use and operate the leased lines, he is bound by the terms of the lease (Woodruff v. Railway Co., 93 N. Y. 609; Brown v. Railroad Co., 35 Fed. 444); certainly, to the extent of the earnings of the lines (Central Trust Co. v. Wabash, St. L. & P. Ry. Co., 34 Fed. 259). In the present case the receivers took possession of all these leased lines, operated them, received and disbursed the earnings, from June, 1892, to August, 1893. They practically, by payments, recognized the terms of the lease, and acted under them. They paid operating expenses, a large part of the taxes, and the interest on the mortgages. By their report in evidence, they were in receipt of earnings from the system large enough to pay all operating expenses, insurance, and taxes, and a large part of the interest. These earnings went into their hands because of this lease. Whether they received them as lessees, or in any other capacity, they were bound to disburse these earnings in accordance with the terms of the instrument, under

which the earnings were received. Under the lease, these earnings were to be applied first to the operating expenses, insurance, and taxes, before they were applied to the coupons on the mortgage bonds. The payment of the latter was diversion of moneys appropriated to the taxes, and this diversion must be restored. These receivers must pay all balances of taxes for the periods stated which are lawfully due, and it is so ordered.