FIRST NATIONAL BANK OF OMAHA, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 30033.   Promulgated November 8, 1929.

*Kenneth S. Finlayson, Esq.*, and *Edward R. Burke, Esq.*, for the petitioner.

*P. M. Clark, Esq.*, and *C. C. Holmes, Esq.*, for the respondent.

OPINION.

SMITH: In its returns for each of the years 1921, 1922, and 1923 the petitioner deducted from gross income the amount of bad debts

ascertained to be worthless during the year and charged to profit and loss and also an additional amount set up in a bad debt reserve in each taxable year. There was no duplication of the amounts claimed as deductions in any instance; that is, bad debts ascertained to be worthless and charged to the reserve for bad debts were not claimed as a deduction from gross income. In the audit of the petitioner's tax returns the respondent has allowed the deduction of only the debts ascertained to be worthless and charged off during each of the taxable years, whether charged to profit and loss or to the bad debt reserve. In his deficiency notice, upon which this appeal is predicated, the respondent states:

Inasmuch as your books are kept on the cash receipts and disbursements basis, you are not entitled to a reserve for bad debts as outlined in Article 151, Regulations 62. Only actual bad debts ascertained to be worthless have been allowed.

Section 234 (a) of the Revenue Act of 1921 provides in part as follows:

(a) That in computing the net income of a corporation subject to the tax imposed by section 230 there shall be allowed as deductions:

\* \* \* \* \* \* \*

(5) Debts ascertained to be worthless and charged off within the taxable year (or in the discretion of the Commissioner, a reasonable addition to a reserve for bad debts) ; and when satisfied that a debt is recoverable only in part, the Commissioner may allow such debt to be charged off in part.

In construing this provision of law the respondent prescribed, with the approval of the Secretary, Treasury Decision 3262, under date of December 21, 1921. This Treasury decision provides in part:

(2) Taxpayers who have, prior to 1921, maintained reserve accounts for bad debts may deduct a reasonable addition to such reserves in lieu of a deduction for specific bad-debt items. Taxpayers who have not heretofore maintained such reserve accounts may now elect to do so, and in such case shall proceed to determine the amount of the reserve that should reasonably have been set up as at December 31, 1920 (which shall not be deducted in computing net income) and, in respect of 1921 and subsequent years, may add a reasonable addition to such reserve and deduct the amount in computing taxable net income.

This Treasury decision was incorporated as the first part of article 155 of Regulations 62, to which was added the following to complete the entire article:

\* \* \* Where a reserve account is maintained, debts ascertained after December 31, 1920, to be worthless in whole or in part, (a) if such debts were outstanding at December 31, 1920, should be charged against the reserve and may be deducted from income, in accordance with article 151; (b) if such debts arose after December 31, 1920, should be charged against the reserve, and not deducted from income. What constitutes a reasonable addition to a reserve for bad debts must be determined in the light of the facts, and will vary as between classes of business and with conditions of business prosperity. A

taxpayer using the reserve method to make a statement in his return showing the volume of his charge sales (or other business transactions) for the year and the percentage of the reserve to such amount, the total amount of notes and accounts receivable at the beginning and close of the taxable year, and the amount of the debts which have been ascertained to be wholly or partially worthless and charged against the reserve account during the taxable year.

The Commissioner's treatment of a change from the specific bad-debt method to the reserve method is indicated in the following excerpt from the Commissioner's rulings:

Under further provisions of Article 155, regulating a change to the reserve method of providing for bad debts, it is held that any debts of the corporation which were on its books at May 31, 1920, and have been or shall be determined to be worthless at a subsequent date, may be charged against the reserve and claimed as a deduction in its return for the years in which they have been determined to be worthless.—I. T. 1442, C. B. 1–2, p. 119.

Not only is the addition to the reserve for 1922 deductible from gross income for that year, but the amount of bad debts ascertained to be worthless and charged off during that year which were outstanding on December 31, 1921, are also deductible from gross income for 1922, in accordance with Articles 151 and 155 of Regulations 62.—I. T. 1743, C. B. II–2, p. 143.

Under the provisions of Article 155 of Regulations 62, the taxpayer, having elected to maintain a bad-debt reserve, was required to determine the amount of the reserve which should reasonably have been set up as at the close of the preceding taxable year, which reserve did not constitute a proper deduction in computing net income. Against this reserve all bad debts representing accounts accrued prior to the current fiscal year were to be charged, but these debts were proper deductions in computing the net income of the current fiscal year.— S. R. 1441, C. B. III–2, p. 126.

In the first case coming before the Board involving the proper interpretation of section 234 (a) (5) of the Revenue Act of 1921, where there was a change from the deduction of debts ascertained to be worthless and charged off within the taxable year to the reserve method, this Board stated as follows in *Transatlantic Clock & Watch Co.*, 3 B. T. A. 1064:

The real question presented by this appeal is whether a taxpayer changing from the basis of claiming as a deduction from gross income debts actually ascertained to be worthless to a deduction of a reasonable addition to a reserve for bad debts may, for the year in which the change is made, deduct both debts ascertained to be worthless during the year and a reserve set up for bad debts at the close of the year. We are of the opinion that the statute does not permit such a deduction. The income tax and excess-profits tax are each computed upon the basis of a 12-month period. A return for such period must reflect the actual gains, profits, and income of such period. Manifestly, a taxpayer which claims the deduction of a greater amount for debts ascertained to be worthless than properly belongs to such year is claiming a benefit not warranted by the statute. In the instant appeal the taxpayer has elected to deduct from gross income a reasonable addition to a reserve for bad debts. We are of the opinion that it is entitled to such deduction, but not to the deduction of such an addition to a reserve for bad debts and also debts ascertained to be worthless during the year.

The respondent acquiesced in the decision made and thereafter promulgated Mimeograph 3527, dated March 30, 1927 (C. B. VI-1-p. 68), holding that taxpayers are not required to set up a reserve for bad debts at the beginning of the year to which the change to the reserve basis was made and that no deduction may be made for debts arising from sales of years prior to the adoption of the reserve basis.

The respondent has disallowed the deduction from gross income of any addition to a reserve for bad debts by the petitioner, upon the ground that its books of account were kept on the cash receipts and disbursements basis. The evidence, however, is to the effect that the books of account were not kept strictly on a cash receipts and disbursements basis. Where a note was discounted the amount of the discount charged in respect thereof was taken up in income at the date of the receipt of the note. No contention is made by the respondent that the books of account do not clearly reflect the income of the petitioner. Neither is there any contention that bad debts of the bank do not constitute a loss either of capital or of reported income. The situation is entirely different from that which obtained in *Charles A. Collin*, 1 B. T. A. 305, in which the Board held that a taxpayer who keeps his accounts and makes his returns on a cash receipts and disbursements basis may not deduct from gross income, as for a bad debt, an item of accrued interest which he has not at any time previously treated as income or reported as taxable income. The respondent does not deny that the petitioner is entitled to deduct from gross income bad debts ascertained to be worthless and charged off its books of account. He does contend, however, that the petitioner is not entitled to the benefit of the deduction of an addition to a reserve for bad debts. We think that the position of the respondent is untenable. If the petitioner is entitled to deduct from gross income under its system of bookkeeping and reporting bad debts charged off, it is entitled to the benefits of section 234(a)(5) of the Revenue Act of 1921 with respect to the setting up of a reserve for bad debts and deducting from income the addition made thereto each year.

An inspection of section 234 (a) (5) of the Revenue Act of 1921 shows that a corporate taxpayer is entitled to deduct from gross income either " debts ascertained to be worthless and charged off within the taxable year " or " in the discretion of the Commissioner, a reasonable addition to a reserve for bad debts." It is to be noted that the law does not provide that a taxpayer may deduct both debts ascertained to be worthless and also a reasonable addition to a reserve for bad debts. It may deduct either one but not both. This was the position taken by the Board in *Transatlantic Clock & Watch Co.*,

*supra,* and also by the United States Circuit Court of Appeals for the First Circuit in *Rhode Island Hospital Trust Co.* v. *Commissioner,* 29 Fed. (2d) 339. The court stated:

As already stated, it is now conceded that the tax authorities were correct in ruling that the trust company was not entitled both to deduct the $87,500 above referred to as a bad debt, and also to make an addition of $200,000 to its reserve; but it does not follow that the tax authorities should not have added the $87,500 to the proposed addition to the reserve. Taxpayers' rights are not, under the conditions here involved, to be determined on merely technical grounds. The provision for this reserve first appeared in this act of 1921. The trust company's real rights were not to be destroyed because of its initial failure to put its claim on the technically proper ground, under this new provision.

The evidence in this case shows that the reserve of $110,000 set up at the close of 1921 was merely for the purpose of taking care of lost and doubtful accounts on its books at December 31, 1921. Charles T. Kountze, vice president and chairman of the board of the petitioner, deposed as follows with respect to the determination of the reserve:

We made an estimate of lost and doubtful paper and set up on our books an amount that we thought would cover the loss that we had in the bank.

Subsequent events showed that the reserve set up was not large enough to cover the amounts determined to be worthless in 1922. The evidence therefore amply supports the contention of the respondent that the $110,000 item was a reasonable amount to set up as a reserve at the close of 1921. We are of the opinion, however, that the evidence warrants an increase in that amount for the purpose of determining a reasonable addition to a reserve for bad debts for 1921. The petitioner charged to undivided profits in 1921, $51,-993.85 for debts ascertained to be worthless during that year. Of this amount only $49,466.61 represented amounts included in its bills receivable at December 31, 1920. The balance of $2,527.24 represented bills receivable taken in 1921 which were determined to be worthless prior to the close of the year. Even if the petitioner had set up a proper reserve for bad debts at the close of 1920, it can not be assumed that the petitioner would have foreseen that $2,527.24 of notes received in 1921 would be worthless in that year. If the petitioner had consistently charged debts ascertained to be worthless to a reserve it would have had to add to the reserve in 1921 the $2,527.24. We therefore conclude that a reasonable addition to the reserve for bad debts for 1921 was the amount of $112,527.24. This determination is, as we understand it, consonant with the decision of the Circuit Court of Appeals in *Rhode Island Hospital Trust Co.* v. *Commissioner, supra.* Cf. *Turl Iron & Car Co.,* 9 B. T. A. 740.

The evidence also shows that reasonable additions to the reserve for bad debts for 1922 and 1923 were in the respective amounts of $139,986.85 and $52,868.55. It is immaterial that in 1922, after the reserve for bad debts was exhausted, the balance was charged to profit and loss. This did not result in any duplication of deductions. During that year the petitioner actually determined that $149,986.85 notes receivable were worthless, $110,000 of which amount was charged against the reserve which had been set up at the close of the preceding year to provide for estimated bad debts in its accounts receivable as at that date and $39,986.85 of which was charged to profit and loss. It then replenished its reserve for bad debts by setting up an additional amount of $100,000. The petitioner claimed the deduction in its return for 1922 of $140,983.01. The respondent allowed the deduction of only $102,659.29. The amount of $139,986.85 was a reasonable addition to the reserve for bad debts for 1922 and is deductible from gross income of that year. For 1923 a reasonable addition to a reserve for bad debts is $52,868.55.

The second point in issue relates to the deductibility of certain amounts paid by the petitioner in each of the taxable years to the Omaha Clearing House Association. The petitioner claimed a deduction from gross income of the entire amounts paid to the association during each of these years. It now concedes that certain of the amounts paid are not deductible from gross income, in view of the fact that they represented payments made to charities by the petitioner through the instrumentality of the Clearing House Association. The respondent admits that a portion of the amounts paid during each of the years in question is deductible. In other words, he admits that the amounts paid by the petitioner for the upkeep of the Clearing House Association was an ordinary and necessary expense of the petitioner, but he contends that the amounts paid by the petitioner to the Clearing House Association to be paid by it to certain civic organizations for the promotion of conventions, etc., are not legal deductions from income.

The evidence indicates that the Clearing House Association operates under a budget system. For its members it makes charitable contributions and contributions for the upbuilding of business in the City of Omaha and State of Nebraska. Where the disbursements in a given year are in excess of the amounts contemplated by the budget, the amounts are assessed against the members either in the current year or in a succeeding year. In 1920 the Clearing House Association made appropriations far in excess of the budget allowances for 1920. The petitioner was indebted to the Clearing House Association at January 1, 1921, in the amount of $5,997.87. This indebtedness was paid off by the petitioner during the years

1921, 1922, and 1923, with the result that at the close of 1923 the petitioner had a credit balance with the Clearing House Association of $518.35. The evidence does not afford a basis for the segregation of the petitioner's indebtedness to the Clearing House Association at January 1, 1921. Whether a part or all of this amount was for charities is not in evidence. It is true that testimony shows that certain bills were received by the petitioner representing disbursements made by the Clearing House Association on the petitioner's account in the early part of January, 1921, which indicated that certain amounts were for charities and certain amounts for Clearing House Association expenses. But we can not segregate the entire amount nor can we determine that the Clearing House Association expense for the year 1920 was not included in the assessments made against the petitioner and paid by it in 1920. In this state of the record, no allowance can be made with respect to any portion of the petitioner's indebtedness to the Clearing House Association at the close of 1920 which was paid off during the succeeding three-year period.

The evidence shows that the Clearing House Association merely acted as disbursing agent for the petitioner in making contributions to charitable and civic organizations. We therefore think that payments made on behalf of the petitioner by the association during the years 1921, 1922, and 1923 should be regarded as having been made by the petitioner direct. The payments made by the petitioner to the Clearing House Association in each year were sufficient to cover the payments made by the Clearing House Association for it. From our findings it is seen that the amounts paid by the Clearing House Association for the petitioner aggregated $8,001.36 for 1921, $6,245.10 for 1922, and $4,498.39 for 1923. Of these amounts the petitioner concedes that $1,771.31, $2,608.86, and $1,312.04 are not deductible. It insists, however, upon its right to deduct the balance as ordinary and necessary operating expenses.

Section 234 (a) (1) of the Revenue Act of 1921 permits a corpo-- rate taxpayer to deduct from gross income " all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business." In *Poinsett Mills*, 1. B. T. A. 6. we held that a contribution made by a corporation to a church maintained in its mill village, producing direct benefit to the corporation, is an allowable deduction under the like provision of the Revenue Act of 1918. In *Kornhauser* v. *United States*, 276 U. S. 145, it was stated:

In the *Appeal of F. Meyer & Brother Co.*, 4 B. T. A. 481, the Board of Tax Appeals held that a legal expenditure made in defending a suit for an account-

ing and damages resulting from an alleged patent infringment was deductible as a business expense.

The basis of these holdings seems to be that where a suit or action against a taxpayer is directly connected with, or, as otherwise stated (*Appeal of Backer*, 1 B. T. A. 214, 216), proximately resulted from, his business, the expense incurred is a business expense within the meaning of § 214 (a), subd. (1), of the act. These rulings seem to us to be sound and the principle upon which they rest covers the present case.

The petitioner does not contend for the right to deduct from gross income clearly charitable contributions. The only question in issue is the right of petitioner to deduct contributions made to organizations for the upbuilding of business in the City of Omaha, and in the State of Nebraska, and for the entertainment of conventions in the City, and for expenses connected with bankers conventions or other conventions redounding to the benefit of the petitioner and other business organizations of Omaha and Nebraska. To the extent that the motive for making these contributions is for the increase of the petitioner's business they are clearly allowable as deductions. The same holds true with respect to contributions for the promotion of conventions which benefit the banking fraternity generally and the petitioner in particular. We think it is not necessary to discuss in detail the evidence offered in support of the claims of the petitioner with respect to contributions made to the Chamber of Commerce, the Junior League, the Colored Commercial Organization, the Women's Club, etc. The evidence all goes to show that these were for the purpose of promoting business in Omaha and that it was expected a benefit would accrue to the petitioner from the contributions. The evidence does not satisfy us, however, with respect to certain contributions mentioned below:

### 1921

| | | |
|---|---|---|
| Jan. 7 | Christian Record Herald | $4. 57 |
| Mar. 28 | Tickets, No. — Star Lodge | 1. 92 |
| Oct. 7 | Dinners, Fontanelle | 6. 00 |
| | Total | 12. 49 |

### 1922

| | | |
|---|---|---|
| Feb. 21 | Willard Hall | 175. 00 |
| June 13 | National Guard | 35. 00 |
| July 16 | Tuberculosis eradication | 218. 75 |
| July 25 | Americanization work | 175. 00 |
| Nov. 27 | Camp Fire Girls | 17. 50 |
| | Total | 621. 25 |

### 1923

| | | |
|---|---|---|
| Feb. 28 | Boy Scouts 1922 pledge | 144. 38 |
| May 29 | Nebraska National Guard | 52. 50 |

| | | |
|---|---|---|
| May 29_____ | United States trust bill_____ | $262.50 |
| Sept. 13_____ | Harding Memorial_____ | 18.36 |
| Oct. 8_____ | Boy Scouts_____ | 144.38 |
| | Total_____ | 622.12 |

With the exception of the above amounts and the amounts designated as " charitable contributions," we think the contributions paid by the Clearing House Association in the respective years constitute legal deductions from gross income of the petitioner as ordinary and necessary expenses.

The remaining issue relates to the deductibility in the year 1923 of an item of $94,807.73, representing an amount paid to the Nebraska National Bank of Omaha. In that year the petitioner took over certain assets and liabilities of the Nebraska National Bank of Omaha and paid to the latter bank the amount in dispute as a bonus. The petitioner contends that the amount is deductible as an expense of the year in which it was paid. It is argued that the expenditure did not result in the acquirement of any capital asset that the petitioner could set up in its books and should therefore be allowed as a deduction; that it might properly be classified as an advertising expense.

In computing the taxable income of any year a taxpayer is permitted to take only the deductions specified by the statute. The expenditure in question does not come within any of such deductions. Clearly it was not an ordinary and necessary expense of the year 1923. It was paid out in connection with a capital transaction, the purchase of assets and liabilities. The petitioner itself designated the amount as a " bonus " paid to the liquidated bank. The benefit, if any, resulting to the petitioner was certainly of a capital nature. The fact that the banking laws prohibited the petitioner from including the asset in its capital does not change its character. The disallowance of the deduction by the respondent was not in error.

Reviewed by the Board.

*Judgment will be entered under Rule 50.*