HELVERING, COMMISSIONER OF INTERNAL REVENUE, v. REYNOLDS.

No. 684. Argued April 30, May 1, 1941.—Decided May 26, 1941.

*Mr. Thomas I. Emerson,* with whom *Solicitor General Biddle, Assistant Attorney General Clark,* and *Messrs. Sewall Key* and *Newton K. Fox* were on the brief, for petitioner.

*Mr. J. Gilmer Körner, Jr.* (with whom *Mr. H. G. Hudson* was on the brief) and *Mr. Erwin N. Griswold* for respondent.

*Messrs. Orville Smith* and *Erwin N. Griswold* filed a brief, as *amici curiae,* urging affirmance.

MR. JUSTICE DOUGLAS delivered the opinion of the Court.

Respondent's father died in 1918, leaving him a remainder interest in a testamentary trust, an interest which the court below found to be contingent under North Carolina law. He received his share of the trust, including securities, from the trustee on April 4, 1934. Some of the securities so distributed had been received by the trustee from the decedent's estate and others had been purchased by the trustee between 1918 and 1934. During the year 1934 respondent sold some of the securities in each group. In computing his gains and losses he used as the basis the value on April 4, 1934, when he received the securities from the trustee. The Commissioner determined that the proper basis under the Revenue Act of 1934 (48 Stat. 680) was the value of the securities at the time of decedent's death in the case of those then held by decedent and their cost to the trus-

tee in the case of those which the trustee had purchased. The Board of Tax Appeals sustained the Commissioner. 41 B. T. A. 59. The Circuit Court of Appeals reversed. 114 F. 2d 804. We granted the petition for certiorari (exclusive of. the question whether the remainder was vested or contingent under the law of North Carolina) because of a conflict among the circuits.[1]

Sec. 113 (a) (5) of the 1934 Act provided: "If the property was acquired by bequest, devise, or inheritance, or by the decedent's estate from the decedent, the basis shall be the fair market value of such property at the time of such acquisition." The government places considerable stress on *Maguire v. Commissioner, ante,* p. 1; *Helvering v. Gambrill, ante,* p. 11; and *Helvering v. Campbell, ante,* p. 15, decided under the 1928 and 1932 Acts, in support of its contention that as respects securities owned by decedent the proper basis was their value at his death even though respondent's interest was then contingent. And it also relies on Treasury Regulations 86, promulgated under the 1934 Act, Art. 113 (a) (5)–1 (b) of which provided that "all titles to property acquired by bequest, devise, or inheritance relate back to the death of the decedent, even though the interest of him who takes the title was, at the date of death of the decedent, legal, equitable, vested, contingent, general, specific, residual, conditional, executory, or otherwise." Respondent, on the other hand, urges that the phrase "at the time of such acquisition," when it was included in the 1934 Act, had acquired by construction a definite meaning which excluded contingent remainders, and therefore that Congress must be presumed to have used those words in that sense. In that connection he points out that the phrase

---

[1] Opposed to the decision below are *Van Vranken* v. *Helvering,* 115 F. 2d 709; *Cary* v. *Helvering,* 116 F. 2d 800; *Archbold* v. *Helvering,* 115 F. 2d 1005—all from the Second Circuit; and *Augustus* v. *Commissioner,* 118 F. 2d 38, from the Sixth Circuit.

"at the time of such acquisition" had appeared in the 1921, 1924, and 1926 Acts [2] and that certain office decisions of the Treasury,[3] and certain decisions of the lower federal courts [4] under those acts, made prior to the enactment of the 1934 Act, had held that a beneficiary did not acquire property when his interest was merely contingent. Respondent emphasizes that the legislative history of the 1934 Act shows no mention of the prior administrative and judicial treatment of contingent remainders and makes no complaint with the practice of the bureau or with the decisions. He insists that the words "acquired" or "acquisition" are not vague or ambiguous words but mean to obtain "as one's own," as held in *Helvering* v. *San Joaquin Fruit & Investment Co.*, 297 U. S. 496, 499. By these arguments and related ones, respondent seeks to demonstrate that the earlier rule had become embedded in the law so that it could be changed not by administrative rules or regulations but by Congress alone. On the basis of such reasoning and the difference in wording between the 1934 Act and the 1928 and 1932 Acts, he seeks to distinguish the *Maguire, Gambrill,* and *Campbell* cases. And since Art. 113 (a) (5)–1 (b) was promulgated on February 11, 1935, respondent insists that to make it applicable to transactions occurring in 1934 would be to give it a retroactive effect contrary to *Helvering* v. *R. J. Reynolds Tobacco Co.*, 306 U. S. 110.

Respondent's position is not tenable. We are not dealing here with a situation where the meaning of statutory

---

[2] Sec. 202 (a) (3), Revenue Act of 1921 (42 Stat. 229); § 204 (a) (5), Revenue Act of 1924 (43 Stat. 258); § 204 (a) (5), Revenue Act of 1926 (44 Stat. 14).

[3] O. D. 727, 3 Com. Bull. 53 (1920); G. C. M. 10260, XI–1 Cum. Bull. 79, 80 (1932).

[4] See, for example, *Pringle* v. *Commissioner*, 64 F. 2d 863; *Hopkins* v. *Commissioner*, 69 F. 2d 11. Cf. *Lane* v. *Corwin*, 63 F. 2d 767.

language is resolved by reference to explicit statements of Congressional purpose. *Maguire* v. *Commissioner, supra; Helvering* v. *Campbell, supra.* Here, the Committee Reports [5] on the 1934 Act are wholly silent as to whether a taxpayer has acquired property within the meaning of § 113(a)(5) at a time when he has obtained only a contingent remainder interest. And we need not stop to inquire whether, in absence of the Treasury Regulations under the 1934 Act, the administrative construction of "acquisition" under the earlier Acts was of such a character (*Higgins* v. *Commissioner,* 312 U. S. 212) and the prior judicial decisions had such consistency and uniformity that Congressional reënactment of the language in question was an adoption of its previous interpretation, within the rule of such cases as *United States* v. *Dakota-Montana Oil Co.,* 288 U. S. 459. That rule is no more than an aid in statutory construction. While it is useful at times in resolving statutory ambiguities, it does not mean that the prior construction has become so embedded in the law that only Congress can effect a change. *Morrissey* v. *Commissioner,* 296 U. S. 344, 355. And see *Murphy Oil Co.* v. *Burnet,* 287 U. S. 299. It gives way before changes in the prior rule or practice through exercise by the administrative agency of its continuing rule-making power. *Helvering* v. *Wilshire Oil Co.,* 308 U. S. 90, 100-101. Nor is Art. 113(a)(5)-1(b) of the Regulations condemned by *Helvering* v. *R. J. Reynolds Tobacco Co., supra.* That case turned on its own special facts. The transactions there in question took place at a time when a regulation was in force which expressly negatived any tax liability. The regulation remained outstanding for a long time and was followed by several reënactments of the statute. About five years after the transactions in question took

---

[5] H. Rep. No. 704, 73d Cong., 2d Sess., pp. 27-28; S. Rep. No. 558, 73d Cong., 2d Sess., pp. 34-35.

place, the prior regulation was amended so as to impose a tax liability. There are no such circumstances here. No relevant regulation was in force at the time respondent sold the securities in 1934. The regulation here in question was promulgated under the very Act which determines respondent's liability. The fact that the regulation was not promulgated until after the transactions in question had been consummated is immaterial. Cf. *Manhattan General Equipment Co.* v. *Commissioner*, 297 U. S. 129. The magnitude of the task of preparing regulations under a new act may well occasion some delay. To hold that respondent had a vested interest in a hypothetical decision in his favor prior to the advent of the regulations, would introduce into the scheme of the Revenue Acts refined notions of statutory construction which would, to say the least, impair an important administrative responsibility in the tax collecting process.

Hence the regulation governs this case if the word "acquisition" as used in § 113 (a) (5) was susceptible of this administrative interpretation. We think it was. However unambiguous that word might be as respects other transactions (*Helvering* v. *San Joaquin Fruit & Investment Co., supra*), its meaning in this statutory setting was far from clear as respects property passing by bequest, devise, or inheritance. The definition of "acquisition" contained in the regulation is not a strained or artificial one. Admittedly, the date of death would be the proper basis if respondent's interest under the testamentary trust had been a vested remainder. But even a vested remainderman does not have all of the attributes of ownership. So the test in this type of case is not whether respondent had full enjoyment of the property prior to the delivery of the securities to him, but whether he earlier had acquired an interest which ultimately ripened into complete ownership. Respondent has become the taxpayer because he has obtained full ownership of

the property and has sold it. The tax is on gains, if any, realized by him in that transaction. Hence, as we indicated in the *Maguire* and *Campbell* cases, to carry into that computation the value of the property at the time the taxpayer had only a contingent remainder interest in it is not to tax him on values which he never received. The statute as thus interpreted "merely provides a rule of thumb in alleviation of a tax which would be computed by reference to the entire amount of the original inheritance were it to be based on cost to the taxpayer." *Helvering* v. *Campbell, supra,* p. 22. As stated by Judge Arant in *Augustus* v. *Commissioner,* 118 F. 2d 38, 43, the regulation was an "apt interpretation to make this part of the statute fit efficiently and consistently into the scheme of the revenue system as a whole." See *Maguire* v. *Commissioner, supra.*

Respondent's suggestion that the regulation does not cover this case will not stand analysis. It has a broad sweep and embraces all interests which have their origin in a bequest, devise, or inheritance.

For the reasons stated, the proper basis as to the securities owned by the decedent was their value at his death.

There remains the question as to the proper basis for securities purchased by the trustee. In the *Maguire* case we held that "cost" was the proper basis as provided in § 113 (a) of the 1928 Act, since securities purchased by a trustee were not "acquired . . . by will" within the meaning of § 113 (a) (5) of that Act. While § 113 (a) (5) of the 1934 Act substitutes "acquired by bequest, devise, or inheritance" for "acquired either by will or intestacy" in the 1928 Act, that change does not call for a result different from that reached in the *Maguire* case. For the reasons there stated, we hold that as respects securities purchased by the trustee the proper basis is the cost to him. That makes it unnecessary to examine the validity of the holding of the court below that Art. 113 (a) (5)–

1 (d) of the Regulations [6] is inapplicable because decedent did not die before March 1, 1913.

*Reversed.*

Mr. Justice Roberts:

I disagreed with the decisions of the Court in *Maguire* v. *Commissioner, ante,* p. 1, *Helvering* v. *Gambrill, ante,* p. 11, and *Helvering* v. *Campbell, ante,* p. 15, construing the meaning of the phrase "time of distribution to the taxpayer," as used in § 113a (5) of the Revenue Acts of 1928 and 1932. My dissent was bottomed upon the view that to construe that phrase as meaning the time of the distribution to a trustee, in a case where the taxpayer could neither receive nor enjoy the property, was to disregard the unambiguous words of the statute. I recognize the binding force of those decisions but think that the Court's disposition of the present cases constitutes an even looser and less admissible construction, amounting, in effect, to legislation.

In all the revenue acts from that of 1921 to that of 1926, inclusive, the cognate provision was that if the property was acquired by bequest, devise, or inheritance, or by the decedent's estate from the decedent, the basis should be the fair market value of such property at the time of such acquisition. In the Revenue Act of 1928 a new provision was substituted making the basis in the case of a general or a specific devise or of intestacy the

---

[6] *"Property acquired before March 1, 1913; reinvestments by fiduciary.*—If the decedent died before March 1, 1913, the fair market value on that date is taken in lieu of the fair market value on the date of death, but only to the same extent and for the same purposes as the fair market value on March 1, 1913, is taken under section 113 (a) (14).

"If the property is an investment by the fiduciary under a will (as, for example, in the case of a sale by a fiduciary under a will of property transmitted from the decedent, and the reinvestment of the proceeds), the cost or other basis to the fiduciary is taken in lieu of the fair market value at the time when the decedent died."

fair market value at the time of the death of the decedent. The same basis was provided if property was acquired by the decedent's estate from the decedent. In all other cases, if the property was acquired by will or by intestacy, the basis was made value at the time of the distribution to the taxpayer. The language was retained in the Act of 1932. In the Revenue Act of 1934, § 113a (5) was again cast in the exact language in which the cognate sections had appeared in all the acts prior to that of 1928.

The meaning of the provision is plain. What Congress was dealing with was the "property." It did not specify a right inchoate or otherwise, or an interest less than ownership, but used the colloquial term "property." And Congress employed a word in common and ordinary use, and not a technical expression of conveyancers, when it spoke of the time of "acquisition" of the property. Anyone reading the sentence would be justified in concluding that if he sold property which came to him from a decedent's estate he must take as his basis of value the market value as of the date when he became the owner of the property; when he became able to enjoy it and dispose of it at his will.

The present decision finds that Congress did not intend any such thing; that, on the contrary, by a circumlocution, it meant that the taxpayer must take as his basis the fair value at the date of the decedent's death if his ultimate acquisition of the property is traceable to a decedent's will. Thus, though he had no use or benefit of the property, could not dispose of it, and might never enjoy it, he is to be treated as having acquired it.

A contrary conclusion is required by *Helvering* v. *San Joaquin Fruit & Investment Co.*, 297 U. S. 496. There the Court, in applying the same section here involved, held that the term "acquired" was not a word of art; and though the acquisition had its origin in an option which

the taxpayer exercised, as here the acquisition had its origin in a will, agreed with the Government's contention that the time of full enjoyment as one's own is the date of acquisition, not the time of obtaining some inchoate interest which may or may not ripen into ownership.

But if there were doubt as to the meaning of Congress, the legislative history should preclude the strained construction now adopted. In the *Maguire* and related cases, administrative construction and legislative history were meagre and inconclusive. Here, violence must be done to a substantial volume of such aids to construction to reach the announced result.

In 1920 the Treasury ruled that

"Where in a bequest of property the remaindermen have only a contingent interest prior to the death of the life tenant, the basis for determining gain or loss from a sale of such property by the remaindermen is its value as of the date of death of the life tenant." [1]

There is no dispute that between 1920 and 1935 the Treasury uniformly so interpreted the statutory provision now otherwise construed. In 1930 this Court held that in the case of a residuary legatee whose property rights attached at the moment of death, and who was in contemplation of law and in fact the owner of the property bequeathed to him from the date of death, the time of acquisition was the date of death.[2] The decision obviously did not touch a situation such as that disclosed in the present cases and the Treasury so understood. In 1932 the General Counsel of the Bureau of Internal Revenue rendered an exhaustive opinion in which he referred to, and analyzed, our decision and summarized the administrative practice by saying:

". . . the position of this office has been that one who has a mere contingent interest does not 'acquire' the

[1] O. D. 727, 3 C. B. 53.
[2] *Brewster* v. *Gage,* 280 U. S. 327.

property in question until his interest becomes vested. (O. D. 727, C. B. 3, 53; S. M. 4640, C. B. V–1, 60.) See also I. T. 1622, C. B. II–1, 135; S. O. 35, C. B. 3, 50." The judicial construction was uniform to the same effect.[3]

That the Treasury thought the distinction between the acquisition date of vested and contingent interests improper is attested by the fact that in its briefs on applications for certiorari in several of the cases cited in Note 4 it so stated; and in the *Pringle* case it strenuously contended for a reversal of the judgment on that ground. In its brief in the *San Joaquin* case, *supra,* which arose under the very section now in question, the Government said: "It is quite generally recognized that the holder of a contingent estate in property does not acquire the same within the meaning of the revenue acts until the estate becomes vested." (Citing several of the cases found in the note.) Of course that statement supported the position of the Government in that case. But a new view has apparently emerged, which better serves the Government's interest here.

It seems plain that when, in 1934, Congress decided to re-adopt the language used in the revenue acts from 1921 to 1926, inclusive, it should be taken as having adopted it not only with a sense of its plain meaning but with a recognition of its uniform interpretation. We are not left, however, without light shed by the legislative history, and that history furnishes confirmation of the view that Congress did not intend to give any strained, extraordinary, or unusual meaning to its language or to disregard its accepted significance.

The revenue acts have always treated estates as taxpayers for purposes of income tax. From the adoption of the Revenue Act of 1918 the Treasury Regulations

---

[3] *Lane* v. *Corwin,* 63 F. 2d 767; *Pringle* v. *Commissioner,* 64 F. 2d 863; *Hopkins* v. *Commissioner,* 69 F. 2d 11; *Becker* v. *Anchor Realty & Investment Co.,* 3 F. Supp. 22, aff'd 71 F. 2d 355; *Warner* v. *Commissioner,* 72 F. 2d 225; *Beers* v. *Commissioner,* 78 F. 2d 447.

uniformly provided that if an executor sold estate property he must take as a basis the value of the property at the time of the decedent's death for calculating taxable gain.[4] The Treasury treated the estate's time of acquisition as the date of the decedent's death within the meaning of the sections of the revenue acts from 1921 to 1926. In 1926 the Court of Claims held that when Congress used the terms "acquired" and "acquisition" it meant that the executor might take, as the basis date, the date of acquisition by the decedent.[5] This decision upset the uniform practice of the Treasury and required an amendment of the regulations to conform to it. Congress was confronted with this situation when it came to pass the Revenue Act of 1928. The history of what happened in this respect is most enlightening. The Joint Committee on Internal Revenue, in its report,[6] referred to the difficulty created by the *McKinney* decision, and the doubt the decision had thrown on the meaning of acquisition, and stated, with respect to the proposed section: "The 'date of death' is recommended to make the basis certain and definite." The Ways and Means Committee also rendered a report to accompany that of the Joint Committee. In this it said:[7] "It is believed that the basis should be the value of the property on the date of the decedent's death, and this rule is incorporated in section 113(a)(5)." It continued: "It is also provided, in the same paragraph, that the basis *in case of a sale by a beneficiary shall be the value of the property on the date of the decedent's death.*" (Italics supplied.)

It is thus abundantly clear that Congress knew how to write a statute to accomplish what the opinion of the Court holds totally different language accomplishes.

---

[4] See *Hartley* v. *Commissioner*, 295 U. S. 216, 220.

[5] *McKinney* v. *United States*, 62 Ct. Cls. 180.

[6] House Document No. 139, 70th Cong., 1st Sess., pp. 17–18.

[7] H. R. No. 2, 70th Cong., 1st Sess., p. 18.

The Senate Committee on Finance rewrote the subsection as embodied in the House Bill, altering it to read as it does in the Revenue Act of 1928.[8]   This was the section which was construed in *Maguire* v. *Commissioner* and related cases.[9]   It thus appears that Congress rejected the verbiage intended to specify the date of the decedent's death as the basis date to be taken by a beneficiary under the decedent's will.  .

With this background, Congress, in adopting the 1934 act, discarded the various basis dates prescribed by the Acts of 1928 and 1932 and harked back to the language which had been used in earlier revenue acts, which had uniformly been construed by the Treasury to mean that the basis date was the date when the taxpayer actually acquired as his own the property whose disposition gave rise to a taxable gain or a deductible loss.   The reason for the change, as shown by the Committee Reports on the Revenue Act of 1934, was not a desire to alter the settled administrative construction of the phrase "time of acquisition" but to do away with the diversity between the basis dates for real and personal property which had been created by the provisions of the 1928 and the 1932 acts.   No other purpose is shown by the reports.[10]

Regulations 86 were approved by the Secretary of the Treasury February 11, 1935, and were later promulgated as applicable to the Act of 1934.   By these regulations it is provided: "Pursuant to this rule of law, [i. e. the doctrine of relation] section 113 (a) (5) prescribes a single uniform basis rule applicable to all property passing from a decedent by will or under the law governing the

[8] Senate Report No. 960, 70th Cong., 1st Sess., p. 26.

[9] For the language of the section see Note 5, *Maguire* v. *Commissioner, ante,* p. 3.    .

[10] Report of Subcommittee on Ways and Means of December 4, 1933, p. 17; Report of the Ways and Means Committee H. R. 704, 73d Cong., 2d Sess., pp. 27–28; Senate Report No. 558, 73d Cong. 2d Sess., pp. 34–35.

descent and distribution of the property of decedents. Accordingly, the time of acquisition of such property is the death of the decedent, and its basis is the fair market value at the time of the decedent's death, regardless of the time when the taxpayer comes into possession and enjoyment of the property." It is upon this regulation that the Court relies to justify its construction of the statute.

I think the regulation plainly unjustified, as an attempt on the part of the Treasury to legislate when Congress has failed to do so. The hearings on the Revenue Act of 1934 show that the Treasury was not satisfied with the provision the Committee recommended Congress should adopt and which Congress did adopt. It evidently attempted to rewrite the Congressional language to carry out what it thought Congress should have provided. It needs no citation of authority to demonstrate that such is not the function of a regulation and that the attempt should fail.

The CHIEF JUSTICE joins in this opinion.