## AVIATION CAPITAL, Inc., v. PEDRICK, Collector of Internal Revenue.

District Court, S. D. New York.

Sept. 7, 1944.

Webster & Garside and Henry C. Smith, all of New York City, for plaintiff.

James B. M. McNally, U. S. Atty., and Samuel Rudykoff, Asst. U. S. Atty., both of New York City, for defendant.

MILLER, District Judge.

This action was brought by the plaintiff, Aviation Capital, Incorporated, to recover of the defendant, Collector of Internal Revenue for the Second District of New York, income taxes for the calendar years 1937, 1938, and 1939 which it claims were illegally assessed and collected by the defendant.

The plaintiff, Aviation Capital, Incorporated, was organized under the laws of Delaware on April 20, 1929, and was duly qualified to transact business in the State of New York. On or about August 29, 1942, the plaintiff was duly dissolved, but by the statutes of the State of Delaware it continues to be a corporate body for the purpose of prosecuting and defending suits, and of enabling it to settle and liquidate its affairs. Prior to its dissolution it was engaged in the business of purchasing, holding, selling and dealing in the capital stock and other securities of aviation companies.

The defendant, William J. Pedrick, is the Collector of Internal Revenue for the Second New York District and resides and performs his duties as such Collector in New York City in the Southern District of New York.

The plaintiff's certificate of incorporation, and as amended, required the plaintiff to purchase its stock from its stockholders upon demand at a purchase price based upon the current net worth of the plaintiff's assets at the time of such demand accord-

ing to a formula therein provided. With respect to such stock, the charter provision provided:

"Stock of the corporation acquired by the corporation shall not be thereby cancelled or retired, but may be reissued; provided, however, that the corporation may reduce its stock in the manner authorized by law and effect such reduction by the cancellation and retirement of any shares of its stock held by it."

Pursuant to said provisions the plaintiff from 1929 to 1939 purchased shares of its stock which it held in its treasury but later resold in 1937, 1938 and 1939 for a higher aggregate amount, for the purpose of obtaining additional working capital. The aggregate of the stock so purchased by the plaintiff and the cost thereof to the plaintiff was as follows:

| Year | Number of Shares | Cost |
|---|---|---|
| 1929 | 100 | $ 1412.45 |
| 1929 | 400 | 5649.80 |
| 1930 | 450 | 6345.34 |
| 1930 | 50 | 668.13 |
| 1931 | 565 | 6862.15 |
| 1931 | 335 | 3740.84 |
| 1932 | 900 | 7988.97 |
| 1933 | 350 | 4524.30 |
| 1934 | 300 | 4187.90 |
| 1935 | 1797 | 26403.85 |
| 1936 | 50 | 1306.25 |
| 1937 | 650 | 15141.20 |
| 1938 | 360 | 9195.28 |
| 1939 | 790 | 31077.84 |
| 1939 | 65 | 2548.65 |

The aggregate of its treasury stock sold by the plaintiff, and the sales prices thereof were as follows:

| Year | Number of Shares | Sales Price |
|---|---|---|
| 1930 | 100 | $ 1,898.20 |
| 1937 | 850 | 23,050.00 |
| 1938 | 615 | 17,678.13 |
| 1939 | 5532 | 207,228.42 |

The following is a statement of the authorized issued, authorized outstanding and treasury stock for the years 1937 to 1939 inclusive:

| Year | Authorized Issued Stock | Authorized Outstanding Stock | Treasury Stock |
|---|---|---|---|
| 1937 | 10,227 | 5,230 | 4,997 |
| 1938 | 10,227 | 5,485 | 4,742 |
| 1939 | 12,795 | 12,730 | 65 |

Upon the issue of its stock by resolution of the board of directors plaintiff regularly allocated the sales price thereof in excess of par value to paid-in surplus. Upon the purchase of its stock plaintiff charged paid-in surplus with the purchase price in excess of par value. Upon sale of its treasury stock plaintiff credited paid-in surplus with the sales price in excess of par value.

The purchases by the plaintiff of its stock above referred to were made only when required to do so by its stockholders, and were in fact made at its current liquidation value in accordance with the formula contained in its certificate of incorporation. The sales by the plaintiff of its stock in 1937, 1938 and 1939 were made in order to raise much needed working capital, and were made at the current liquidation value of the stock at the time of such sales. At the time of such sales the plaintiff had available authorized but unissued stock which it could have sold.

The plaintiff in purchasing its own stock handled the transaction on its books differently from the way it handled the purchase of other stock. In the purchase of other stocks there was no change in the company's net worth, but merely a change in form of assets, from dollars to investments. In the purchase of its own stock there was a reduction of the company's net worth in that the stock so purchased was not carried as an asset or as having any value, although it was not cancelled or retired. The company paid itself no dividends on such treasury stock. When the company sold its own stock so acquired the excess of the proceeds over par went to surplus account, increasing the company's net worth. In the sale of other stocks the profit or loss therefrom went into income account. The sale of the treasury stock had the same effect on the books of the company as if unissued stock had been sold.

The plaintiff filed its income and excess profits tax returns for the calendar years ending December 31, 1937, 1938 and 1939, with the Collector of Internal Revenue for the second New York district. The Commissioner of Internal Revenue, as the result of a review and audit of said returns thereafter determined alleged tax deficiencies for each year which, with interest thereon, amounted to $11,415.36 for 1937, $10,916.67 for 1938, and $23,959.36 for 1939, said additional taxes being based upon the difference between purchase prices and the

subsequent sales prices received upon the sales of its shares. The plaintiff filed due protest in each instance, against the imposition of such additional taxes, and thereafter, on October 9, 1942, the said alleged tax deficiencies for the calendar years 1937, 1938 and 1939 and the interest thereon were paid under protest by the plaintiff to the defendant. On or about December 3, 1942, the plaintiff duly filed claims for refund with the Commissioner of Internal Revenue, seeking the refund of said additional taxes and interest for the three years in question. More than six months have elapsed since the filing of said claims and the Commissioner of Internal Revenue has failed or neglected to take any action with respect thereto.

Plaintiff declared a one hundred per cent (100%) stock dividend on June 17, 1940. Said dividend was paid June 18, 1940. Following is the resolution of the board of directors of plaintiff declaring said dividend:

"After motion duly made, seconded and unanimously adopted it was

"Resolved, That a 100% stock dividend in the stock of the Company be and the same hereby is declared on all stock of the Company, including Treasury stock, on record at 3:30 P.M. Eastern Daylight Saving Time on June 17, 1940, said dividend to be payable June 18, 1940; and

"Further resolved, that for the purpose of the foregoing resolution stock of record shall be deemed to include any share of stock which a purchaser shall have become obligated to purchase from the Company prior to the record date and hour, but for which no certificate shall have been issued at that time, and further that on any share which at the record date and hour the Company shall have become obligated to repurchase, such dividend shall be payable to the Company as in the case of Treasury stock; and

"Further resolved, that the par value ($1.00 per share) for the shares issued for such stock dividend (less the par value of shares payable on Treasury stock) be charged to paid in surplus."

Pursuant to said resolution, the plaintiff allocated 400 shares of its stock to treasury stock.

Gross income, subject to taxation, includes profits of whatever kind and in whatever form paid from trades, sales or dealings in property growing out of the ownership or interest in such property, or gains or profits and income derived from any source whatever. Section 22, subdivision (a) of the Revenue Act of 1936, 26 U.S.C.A. Int.Rev.Code § 22(a); Section 22(a) of the Revenue Act of 1938, 26 U.S.C.A. Int.Rev.Code, § 22(a). Whether the acquisition or disposition by a corporation of shares of its own capital stock gives rise to taxable gain or deductible loss depends upon the real nature of the transaction which is to be ascertained from all its facts and circumstances. The receipt by a corporation of the subscription price of shares of its capital stock upon their original issuance gives rise to neither taxable gain nor deductible loss, whether the subscription or issued price be in excess of or less than the par or stated value of such stock. But if a corporation deals in its own shares as it might in the shares of another corporation, the resulting gain or loss is to be computed in the same manner as though the corporation were dealing in the shares of another. Treasury Regulations 94, Article 22(a)-16 and Treasury Regulations 101, Article 22(a)-16.

Article 66 of Treasury Regulations 74, promulgated under the Revenue Act of 1928, specifically provided that for the purpose of the income tax no gain or loss is realized by a corporation from the purchase or sale of its own stock. On May 2, 1934, the Treasury adopted an amendment to Article 66 subjecting to tax any gain derived by a corporation from the sale of its own shares where it deals in its own shares as it might in the shares of another corporation. This changed ruling was carried forward in Treasury Regulations 94 and 101 which govern the tax years in question. Said Regulations in their amended form are applicable to the tax years subsequent thereto, including the years herein involved, even though there has been no change by Congress in its definition of gross income. Helvering, Commissioner, v. R. J. Reynolds Tobacco Company, 306 U.S. 110, 59 S.Ct. 423, 83 L.Ed. 536; Helvering v. Wilshire Oil Company, 308 U.S. 90, 60 S.Ct. 18, 84 L.Ed. 101; Helvering v. Reynolds, 313 U.S. 428, 61 S.Ct. 971, 85 L.Ed. 1438, 134 A.L.R. 1155; Dow Chemical Company v. Kavanagh, 6 Cir., 139 F.2d 42.

Plaintiff contends that in buying its own stock as required by its charter provision to do, upon the demand by a stockholder to do so, and in carrying it on its

books as without value and not as an asset, and in later selling it solely for the purpose of raising much needed working capital it was not dealing in its own stock as it might in the shares of another corporation, and thus the transaction is outside the scope of the Regulation. Some early decisions support this contention. But recent Circuit Court rulings have given the Regulation a much broader interpretation than one which would include merely speculative transactions and have answered most of the contentions made by the plaintiff in this action. The decision appears controlled by the views expressed and the recent ruling of the Court of Appeals for this Circuit in Commissioner of Internal Revenue v. Air Reduction Company, 2 Cir., 130 F.2d 145. The transactions in question fall within the provisions of the applicable regulations and the profit resulting therefrom is properly included in taxable gross income. See also Allen v. National Manufacture & Stores Corporation, 5 Cir., 125 F.2d 239; Helvering, Commissioner, v. Edison Bros. Stores, 8 Cir., 133 F.2d 575; Brown Shoe Company, Inc., v. Commissioner, 8 Cir., 133 F.2d 582; United States v. Stern Bros. & Co., 8 Cir., 136 F.2d 488; Dow Chemical Company v. Kavanagh, supra; Investment Corporation v. United States, D.C.E.D.Pa., 43 F.Supp. 64.

The plaintiff's complaint is dismissed with costs.