**PORTER, Price Administrator, v. MO-HAWK WRECKING & LUMBER CO. et al.**

No. 10254.

Circuit Court of Appeals, Sixth Circuit.
Aug. 12, 1946.

Samuel Mermin, of Washington, D. C., (George Moncharsh, Milton Klein, and Samuel Mermin, all of Washington, D. C., Samuel Weiner, of Cleveland, Ohio, and Fred W. Lindbloom, of Detroit, Mich., on the brief), for appellant.

John W. Babcock, of Detroit, Mich., for appellees.

Before SIMONS, ALLEN, and MILLER, Circuit Judges.

MILLER, Circuit Judge.

This appeal by the Price Administrator of the Office of Price Administration is from an order of the District Court denying an application under § 202(e) of the Emergency Price Control Act for an order compelling compliance with a subpoena. § 922(e), Title 50 U.S.C.A.App.

In the course of an investigation being conducted by the Office of Price Administration into alleged violations by the appellee, Mohawk Wrecking and Lumber Company, of MPR 215, MPR 26 and GMPR, a document purporting to be an administrative subpoena duces tecum was issued on January 9, 1946 to said Company and the co-partners thereof, Harry Smith and Harry Jaffa. It was served on Harry Smith on January 9, 1946, and by its terms directed him to appear before Arthur J. Schuck of the Office of Price Administration in Detroit, Michigan, on January 11, 1946 and to bring with him certain documents designated therein. The designated hearing was adjourned by agreement first to January 25, 1946, and then to February 4, 1946, on which later date no appearance was made by Mohawk Wreck-

ing & Lumber Company or by Harry Smith. The subpoena in question was executed as follows:

"In testimony whereof, the undersigned, an officer designated by the Price Administrator of the Office of Price Administration, has hereunto set his hand at Detroit, Michigan, this 9th day of January, 1946.
"(Sgd.) W. E. Fitzgerald."

W. E. Fitzgerald, who signed the subpoena, was the District Director of the Office of Price Administration, authorized to sign subpoenas by the Administrator's Revised Order 53 issued on May 13, 1944 (9 FR 5191).

On March 7, 1946, the Administrator, through his district enforcement attorney, applied for an order in the District Court under § 202(e) of the Act requiring the respondents to appear at the Detroit office of the Office of Price Administration and to produce all records required to be produced by the previously issued subpoena. The application was denied by the District Judge on the ground that there was no authority under the Price Control Act for the Administrator's delegation to the district director of the authority to sign and issue subpoenas. Other issues presented by the pleadings were not passed upon and are not involved in this appeal.

The Emergency Price Control Act, by § 202(a), § 922(a), Title 50 U.S.C.A.Appendix, authorizes the Administrator to make such studies and investigations as he deems necessary to assist him in prescribing any regulation or order under the Act. § 202(c), of the Act, § 922(c), Title 50 U.S.C.A. Appendix, provides—"For the purpose of obtaining any information under subsection (a), the Administrator may by subpena require any other person to appear and testify or to appear and produce documents, or both, at any designated place." The appellant claims that his authority to delegate to regional and district directors the power to issue subpoenas is conferred by the following provisions of § 201 of the Act. § 201(a), § 921(a), Title 50 U.S.C.A.Appendix provides in part as follows:

"The Administrator may, subject to the civil-service laws, appoint such employees as he deems necessary in order to carry out

his functions and duties under this Act, * * *."

§ 201(b), § 921(b), Title 50 U.S.C.A. Appendix, provides in part as follows:

"The principal office of the Administrator shall be in the District of Columbia, but he or any duly authorized representative may exercise any or all of his powers in any place."

§ 201(d), § 921(d), Title 50 U.S.C.A.Appendix, provides as follows:

"The Administrator may, from time to time, issue such regulations and orders as he may deem necessary or proper in order to carry out the purposes and provisions of this Act."

The District Judge was of the opinion that his ruling was controlled by the opinion of the Supreme Court in Cudahy Packing Co. v. Holland, 315 U.S. 357, 62 S.Ct. 651, 86 L.Ed. 895, where the Supreme Court had before it precisely the same question under the Fair Labor Standards Act, 29 U.S.C.A. § 201 et seq., involving the authority of the Administrator of the Wage and Hour Division of the Department of Labor to delegate his statutory power to sign and issue a subpoena duces tecum. In that case the Supreme Court held that the Administrator did not have the authority to delegate such power to a regional director of the Wage and Hour Division. Appellant contends that the present case, arising under the Emergency Price Control Act instead of under the Fair Labor Standards Act, involves sufficient differentiating features to make that ruling inapplicable.

A consideration of the wording of the statutory provisions involved in the Cudahy case and of the broad scope of the principles announced by the opinion in that case shows how closely in point is the ruling of that case. The Fair Labor Standards Act contains in almost identical language the same provisions as are quoted above from §§ 201(a) and 201(b) of the Emergency Price Control Act. The Administrator of the Wage and Hour Division under the Fair Labor Standards Act is given authority to issue orders containing such terms and conditions as he finds necessary to carry out the purposes of such orders and to prevent the circum-

vention or evasion thereof, similar to the authority given to the Price Administrator, although the wording in the Fair Labor Standards Act is somewhat different from the wording of § 201(d) of the Emergency Price Control Act quoted hereinabove. The Supreme Court held that such provisions in the Fair Labor Standards Act, two of them being practically identical in wording with the provisions in the Emergency Price Control Act herein relied upon by the Price Administrator, did not confer upon the Administrator the authority to delegate his power to issue subpoenas, in that the power to so delegate was not *expressly* granted. It based its ruling upon a broad general rule of administrative law that the subpoena power can not be delegated by *implication* and that the right to delegate exists only when the authority to so delegate is *expressly* granted. In reviewing the statutes creating numerous administrative agencies, including the Interstate Commerce Act, 49 U.S.C.A. § 12; the National Labor Relations Act, 29 U.S.C.A. § 161(1); the Federal Trade Commission Act, 15 U.S.C.A. § 49; the Packers and Stockyards Act, 7 U.S.C.A. § 222; Veterans Administration Act, 38 U.S.C.A. § 131; Railroad Unemployment Insurance Act, 45 U.S.C.A. § 362(a, m); Walsh-Healey Act, 41 U.S.C.A. § 39; Merchant Marine Act, 46 U.S.C.A. § 1124(a); Federal Power Act, 16 U.S.C.A. § 825f (b); Securities Act of 1933, 15 U.S.C.A. § 77s (b); Securities Exchange Act of 1934, 15 U.S.C.A. § 78u (b); Public Utility Holding Act, 15 U.S.C.A. § 79r (c); Communications Act, 47 U.S.C.A. § 409; Bureau of Marine Inspection and Navigation Act, 46 U.S.C.A. § 239(e); Civil Aeronautics Act of 1938, 49 U.S.C.A. § 644; Motor Carrier Act, 49 U.S.C.A. § 305(d); and Longshoremen's and Harbor Workers' Comp. Act, 33 U.S.C.A. § 927, the Court summed up the rule of administrative law flowing from such legislation as follows:

"The entire history of the legislation controlling the use of subpoenas by administrative officers indicates a Congressional purpose not to authorize by implication the delegation of the subpoena power." 315 U.S. at page 364, 62 S.Ct. at page 655, 86 L.Ed. 895.

Further considering the same question, the Court repeated the rule in the following language:

"All this is persuasive of a Congressional purpose that the subpoena power shall be delegable only when an authority to delegate is expressly granted."

That such is the real basis of the ruling is made clear by the dissenting opinion in the case, which is devoted almost entirely to a vigorous dissent to such a principle of administrative law.

The Administrator's contention in the present case that the foregoing rule is not applicable because his authority to delegate the subpoena power is expressly conferred by the provisions of the Emergency Price Control Act set out hereinabove is directly contrary to the ruling of the Supreme Court in the Cudahy case that such provisions, practically identical in wording, did not expressly delegate such authority to the Administrator. Accordingly, unless the rule announced in the Cudahy case is to be set aside or modified, or unless distinguishing features in this case make it inapplicable, the Price Administrator lacked the claimed authority to delegate the subpoena power to the district director who issued the subpoena herein involved.

The Administrator contends, however, that the decision in the Cudahy case was based on the legislative history leading to the enactment of the Fair Labor Standards Act, rather than the rule above referred to. He points out that Congress in finally enacting that legislation rejected the wording of the bill passed by the Senate which expressly authorized the Administrator to delegate the subpoena power and adopted instead the wording quoted hereinabove. It is urged that the legislative history of the Emergency Price Control Act is entirely different, in that it does not involve any such choice between conflicting provisions dealing with the subpoena power, but on the contrary shows that the Senate Committee on Banking and Currency in reporting out the Price Control Bill stated

that §§ 201(a) and 201(b) of the Act authorized the Administrator to delegate any of the powers given to him by the bill. We believe the Administrator is in error in assuming that the Court's decision in the Cudahy case was based upon the legislative history of the Fair Labor Standards Act. The Court said that if the Act was construed so as to authorize the delegation of the subpoena power by implication it would result in giving the Administrator unrestricted authority to delegate every other power which he possessed. Well considering the effect of such a construction, the Court ruled as it did with the following statement:

"A construction of the Act which would thus permit the Administrator to delegate all his duties, including those involving administrative judgment and discretion which the Act has in terms given only to him, can hardly be accepted unless plainly required by its words." 315 U.S. at page 361, 62 S.Ct. at page 654, 86 L.Ed. 895.

It is true that the Court stated a few sentences thereafter that—"This construction is fully supported by the legislative history of § 4(c)." This legislative history is then set out in a footnote instead of in the body of the opinion. It would thus seem that the legislative history was merely a supporting reason, rather than a primary reason, for the ruling by the Court. The fact that such legislative history does not exist in the present case in no way destroys the applicability of the primary reason upon which the Court's decision was really based. In this connection it is interesting to note that the dissenting opinion in the Cudahy case concedes that the case was not decided on the basis of its legislative history in its statement that "There is no indication whatsoever that the choice of the House bill as against the Senate bill was in any way influenced by the presence in the latter of an express power of the proposed Board to delegate its subpoena power." 315 U.S. at pages 371, 372, 62 S.Ct. at page 659, 86 L.Ed. 895. Its attack on the majority opinion is directed against the ruling that the subpoena power can not be impliedly delegated, clearly showing the interpretation it

gave to the ruling. The report of the Senate Committee on Banking and Currency in reporting out the Price Control Bill is entitled to consideration, but in view of the general language used therein and the fact that it is the report of only one of the two houses of Congress makes it merely one element to be considered among several and certainly not controlling. The report largely paraphrases §§ 201(a) and 201(b) of the Act, refers to the "powers" of the Administrator only generally, and, as is the case in the wording of the Act itself, makes no specific mention of the subpoena power. In any event, the view of the Senate Committee as to the legal effect of the words used in the Act is directly contrary to the later view of the Supreme Court in the Cudahy case. The construction placed upon those words by the Supreme Court came only a few weeks after the enactment of the Emergency Price Control Act. Yet in the several re-enactments of the Act in subsequent years, neither the Senate Committee on Banking and Currency nor Congress itself added anything to the statute to show that Congress, in passing the Act, had in mind an interpretation different from that given by the Supreme Court.

The Administrator contends that the Emergency Price Control Act was administratively construed from the outset to permit the delegation of the power to issue subpoenas and that the action of Congress in subsequently reenacting the Act on June 30, 1944 and June 30, 1945 should be regarded as legislative ratification of the administrative construction. A review of the administration and enforcement of the Act since its original enactment on January 30, 1942 shows that the Act was not administratively construed from the outset to permit such delegation. It appears that a memorandum by the assistant general counsel for the Administrator was issued on March 26, 1942 construing the Act to permit such a delegation. However, the Administrator did not at that time act upon that opinion. The Administrator continued to sign and issue all subpoenas. On June 29, 1943, General Order 53 (8 FR 9037) was issued

delegating the authority to regional administrators and district directors to issue subpoenas which had been signed in blank by the Administrator. Finally, on May 13, 1944, revised Order 53 (9 FR 5191) was issued which delegated the functions of both signing and issuing subpoenas under the Price Control Act to regional administrators and district directors. Such administrative practice and the testimony of Mr. Fleming James, Jr., Director of the Litigation Division, Office of Price Administration, before the House of Representatives Committee to Investigate Executive Agencies on June 22, 1944, makes it clear that in spite of the Administrator's present contention and confident argument in support thereof there was a period of some two years during which real doubt existed in the Office of Price Administration of the Administrator's authority to delegate the subpoena power. The doubtful validity of delegating such authority caused the Administrator to refrain from its exercise for a period of more than two years, during which time no attempt was made to have Congress clarify the situation by amendatory legislation. If the Administrator really believed that it was the intention of Congress in enacting the Emergency Price Control Act to authorize him to delegate such power, it would seem that he would have exercised such power immediately or sought clarifying amendments to remove any existing doubt. Apparently, the Administrator finally took the position on May 13, 1944, when he assumed to exercise that authority, that he would attempt to obtain favorable action upon his contention by litigation rather than by Congressional action, in spite of the obvious delay and expense involved in the litigation that was certain to follow. Such administrative construction of the Act has very little, if any, weight. The rule contended for by the Administrator is at its best no more than an aid in statutory construction. "While it is useful at times in resolving statutory ambiguities, it does not mean that the prior construction has become so embedded in the law that only Congress can effect a change. * * * It gives way before changes in the prior rule or practice through exercise by the administrative agency of its continuing rule-making power." Helvering v. Reynolds, 313 U.S. 428, 432, 61 S.Ct. 971, 973, 85 L.Ed. 1438, 134 A.L.R. 1155; Helvering v. Wilshire Oil Co., 308 U.S. 90, 100, 60 S.Ct. 18, 84 L.Ed. 101. In any event, such a rule, if it is to be applied in this case, supports the position of the appellee more strongly than the position of the Administrator. As pointed out above, shortly after the enactment of the Price Control Act the Supreme Court in the Cudahy case construed unfavorably to the Administrator's contention the statutory language now under consideration. With that interpretation definitely before it, Congress subsequently re-enacted the Act on June 30, 1944 and June 30, 1945 without attempting to amend the language so as to give it a different meaning and effect.

The Administrator correctly argues that the above quoted provision from § 201(a) of the Act unquestionably gives him the authority to delegate certain of "his functions and duties" under the Act. The language of the statute specifically so provides. Reference is made by him to Bowles v. Griffin, 5 Cir., 151 F.2d 458, in which it was held that the Administrator could appoint a rent director for a defense area and delegate to him the authority to fix by orders maximum rents for housing accommodations therein, and to Bowles v. Wheeler, 9 Cir., 152 F.2d 34, in which it was held that the Administrator had the authority to delegate the suit-bringing function to any authorized representative. It is then contended that if certain functions and duties are delegable under the Act, and no differentiation is made by the Act between different functions and duties, it necessarily follows that all of his functions and duties, including the power to issue subpoenas, are delegable. The answer to that is that the Supreme Court in the Cudahy case had before it the same language and the same question and held that the statutory authority to delegate "his functions and duties" under the Act did not include the authority to delegate the subpoena power.

896

The Administrator also strenuously argues that his authority to delegate the subpoena power is to be inferred from the nature, character and extent of his duties, and that his administration and enforcement of the Act will be seriously handicapped unless such authority exists. This argument was also stressed by the dissenting opinion in the Cudahy case, but rejected by the majority opinion. We concede the existence and complexity of the multitudinous duties which the Price Administrator is required to perform in order to successfully and effectively carry out the purposes of the Act. No doubt the authority to delegate the subpoena power would materially aid him in expeditiously performing those duties. Yet if we adhere to the rule that the subpoena power can not be impliedly delegated, it is not a proper argument to be considered by this Court. It is a question of legislative policy, depending upon many various considerations, whether it is wise or unwise to give unlimited authority to an administrative officer to delegate the exercise of the subpoena power. As pointed out by the Supreme Court in the Cudahy case, 315 U.S. at pages 363, 364, 62 S.Ct. at page 655, 86 L.Ed. 895, such unlimited authority of an administrative officer "is a power capable of oppressive use, especially when it may be indiscriminately delegated and the subpoena is not returnable before a judicial officer," which is a cogent reason for granting such power "only to the responsible head of the agency." If such authority is necessary to make the administration and enforcement of the Act successful, Congress can at any time and in short order create such authority. The appellant's contention in this respect is sufficiently answered by the following closing words in the majority opinion in the Cudahy case:

"Nor can we assume, as the Government argues, that Congress is wholly without design in withholding the power in this case and granting it in others, or even if it had been, that it is any part of the judicial function to restore to the Act what Congress has taken out of it. Even though Congress has underestimated the burden which it has placed upon the Administrator, which is by no means clear, we think that the legislative record establishes that Congress has withheld from him authority to delegate the exercise of the subpoena power, and that this precludes our restoring it by construction."

The Administrator refers us to the four following opinions of different Circuit Courts of Appeals, all involving the same issue as is now presented to us and sustaining his contentions: Pinkus and Segel v. Porter, 7 Cir., 155 F.2d 90, decided May 2, 1946; Raley v. Porter, App.D.C., 156 F.2d 561; Porter v. Gantner & Mattern Co., 9 Cir., 156 F.2d 886; Porter v. Murray, 1 Cir., 156 F.2d 781. We recognize the weight of those opinions. It is sufficient to say here that they hold that the decision of the Supreme Court in the Cudahy Packing Co. case is not controlling due to the differentiating features involved in the Emergency Price Control Act, as contended for by the Administrator and as pointed out hereinabove. In our view that the ruling in the Cudahy Packing Co. case does control the present situation, we necessarily have to disagree. We fail to find in any of the four opinions referred to any real recognition of the broad rule of administrative law pronounced by the opinion in that case, namely, that the subpoena power conferred by legislation upon the head of an administrative agency is delegable by him "only when an authority to delegate is expressly granted." As stated above, we believe that fundamental rule controls our decision in the present case.

The order of the District Court is accordingly affirmed.