The **BLOOMINGTON LIMESTONE COR-PORATION, Plaintiff,**

v.

**UNITED STATES of America, Defendant.**

No. IP 67–C–55.

United States District Court, S. D. Indiana, Indianapolis Division.

April 10, 1970.

William F. Welch, W. Rudolph Steckler, of McHale, Cook & Welch, Indianapolis, Ind., for plaintiff.

Johnnie M. Walters, Asst. Atty. Gen., Donald R. Anderson, Herbert Grossman, Dept. of Justice, Washington, D. C., Stanley B. Miller, U. S. Dist. Atty., for the Southern District of Indiana, Indianapolis, Ind., for defendant.

## MEMORANDUM ENTRY

HOLDER, District Judge.

The trial of the issues of the action commenced on July 28, 1969 and was concluded on July 31, 1969 subject to a post trial briefing schedule which was concluded on March 13, 1970 with the filing of plaintiff's reply brief. The issues were presented by the three counts of the January 25, 1967 complaint, as amended, and the answer, as amended, consisting of admissions and denials of the alleged facts of each count of the complaint.

The plaintiff, The Bloomington Limestone Corporation, was a corporation at all times in issue and was organized and existed under the laws of the State of Indiana, with its principal office situated in the City of Bloomington, State of Indiana. During the calendar years 1955 through 1959 and at all other relevant times, the plaintiff was engaged in the production of limestone for building materials. It quarried limestone in rough block form from several different locations of its own quarry land. It sold a portion of such rough block stone to customers who processed or milled it into finished products. The rest of such quarried stone was sent to plaintiff's own mills for processing and milling into finished products. Occasionally, the plaintiff purchased rough block stone from other producers of stone. During such times, the plaintiff was in competition with companies engaged solely in the mining and sale of rough block limestone, with those companies solely engaged in the purchase of rough block stone who processed and milled it into finished products, and with those companies who engaged in quarrying, processing and milling such rough block stone. The limestone industry is centered in the Counties of Lawrence, Monroe and Owen, in the State of Indiana, and which area is commonly referred to as the Indiana Oolitic Limestone Industry. At all times in issue there was a real and substantial market for rough block limestone within and without such area and there were substantial production, sales and purchases. Rough block limestone constitutes the first commercially marketable product of plaintiff for percentage depletion purposes.

The plaintiff maintained its books and records and filed its United States income tax returns on the accrual method of accounting. Its fiscal year at all times in question began on January 1, and ended December 31. The plaintiff's

taxable income for the year 1955, as assessed by its return and later adjusted after a United States Internal Revenue Service examination, was $267,071.98 on which it paid tax of $132,889.73. The plaintiff's taxable income for the year 1956, as assessed by its return and later adjusted after a United States Internal Revenue Service examination, was $276,816.64 on which it paid tax of $138,444.65. The 1957 tax year is not germane to the issues of the case. The plaintiff's 1958 return reported a net loss of $43,164.35 and no tax liability, which loss it carried-back to 1955 and filed a claim for refund based on such loss carry-back in the amount of $21,-968.37. The plaintiff's 1959 return reported a net loss of $109,981.60 and no tax liability, which loss, together with a dividends received credit adjustment of $22.18, authorized a tentative allowance of $57,201.96 against the 1956 tax liability, thus reducing the tax paid for the year 1956 to $81,242.69. The defendant determined that there was no representative market or field price for plaintiff's block limestone and, for the taxable years ended December 31, 1958, and December 31, 1959, premised on such determination, made a further determination that the "gross income from the property" should be computed by use of a "proportionate profits method". By use of this "proportionate profits method", the defendant determined that, for the taxable year ended December 31, 1958, the depletion allowance was limited to $2,821.96, and that for the taxable year ended December 31, 1959, there was no depletion allowance. The defendant made no allowance for cost depletion for either year under Section 611, IRC, 1954. The defendant disallowed the 1958 carry-back refund claim of $21,-968.37 and disallowed the depletion claimed by plaintiff in the 1958 return which resulted in an asserted tax deficiency for 1958 of $17,411.17 which was paid by plaintiff plus interest in the amount of $7,636.82. The plaintiff duly claimed a refund of such 1958 tax and interest paid plus statutory interest thereon which was disallowed by defendant. The defendant disallowed the depletion claim by plaintiff in the 1959 return which resulted in a reduction of the 1959 net operating loss carried-back to 1956 from $116,311.-27 to $2,096.52; the defendant asserted a tax deficiency for the year 1956 of $56,111.77, including an adjustment not contested by the plaintiff, which amount plaintiff paid plus interest thereon of $21,938.93. Plaintiff duly filed a claim for refund of $51,879.37 in tax paid plus $20,393.51 in interest and the defendant denied such claim.

During the calendar year 1958, the plaintiff purchased rough block stone for processing and milling from other producers totalling $238,851.68, exclusive of in-bound freight costs. During the calendar year 1959, the plaintiff purchased rough block stone for processing and milling from other producers totalling $237,979.72, exclusive of in-bound freight costs. During the calendar year 1959, the plaintiff sold to the market rough block stone that it had produced which totaled $20,248.57. The plaintiff's sales to others were at market or field prices in the area. The plaintiff transferred rough block stone from its mining operations to its mills for processing and milling in the calendar years 1958 and 1959, and charged itself a price therefor based upon its own published list prices.

The produced limestone in the area was competitively offered, sold and purchased according to established grades in a substantial market. Except for "housing veneer", such grading was adopted and standardized in 1928 by the Indiana Limestone Institute and by the American Standards Association, Incorporated, in 1948. The stone was sold and purchased in the market according to length (over or less than five feet), color and texture. "Housing Veneer" is rough block limestone of short length (five feet or less) with one or more faults or of a long length (more than five feet) with two or more faults. The members of the industry prepared price

lists for the rough block limestone which were circulated and published and were used as the basis of sales, offers and purchases of rough block limestone in the area. The industry further extended discounts for early payment, or quantity purchases, or both. There was at all times in question a well-established representative market or field price for each of the grades and lengths of the quarried rough stone, including "housing veneer" stone, sold to others and transferred from its mining operations to its mills for processing and milling which differed from its list prices as follows:

| LONG LENGTH | PRICE PER CUBIC FOOT | |
|---|---|---|
| | 1958 | 1959 |
| Select Buff | $2.11 | $2.03 |
| Standard Buff | 1.79 | 1.76 |
| Rustic Buff | 1.17 | 1.08 |
| Select Gray | 1.76 | 1.66 |
| Standard Gray | 1.41 | 1.38 |
| Rustic Gray | .74 | .77 |
| Variegated | .93 | 1.08 |

| SHORT LENGTH OR CULL | PRICE PER CUBIC FOOT | |
|---|---|---|
| | 1958 | 1959 |
| Standard Buff | $0.98 | $0.93 |
| Standard Gray | 0.68 | 0.64 |
| Variegated | 0.56 | 0.57 |
| Old Gothic / Monarble / Housing Stone | 0.41 | 0.41 |

The plaintiff quarried the following rough stone and either sold it and/or transferred the stone to its mills for processing which was then sold:

| LONG LENGTH | QUANTITY IN CUBIC FEET | |
|---|---|---|
| | 1958 | 1959 |
| Select Buff | 25,831–6 | 10,600–8 |
| Standard Buff | 103,168–9 | 160,355–2 |
| Rustic Buff | 21,548–1 | 5,357–1 |
| Select Gray | 7,249–3 | 23,921–0 |
| Standard Gray | 59,556–11 | 8,128–11 |
| Rustic Gray | 83–8 | 477–11 |
| Variegated | 45,796–5 | 39,232–5 |

| SHORT LENGTH | QUANTITY IN CUBIC FEET | |
|---|---|---|
| | 1958 | 1959 |
| Standard Buff | 5,075–0 | 16,427–1 |
| Standard Gray | 324–0 | 17,371–8 |
| Variegated | 626–2 | 67,210–0 |
| Old Gothic * | 3,405–5 | 8,195–11 |
| Monarble * | 145–5 | 582–11 |
| Housing Stone * | 141,860–8 | 166,659–8 |

* classed at price of housing stone.

The total gross income from the quarry operation property for the year 1958 was $468,496.85 and for 1959 was $539,591.43 so based on such market and field prices. The gross income based on list prices for each of the years as reported in plaintiff's returns exceeded the income based on market and field prices. Fifty per cent (50%) of each of such year's taxable income from mining was $69,185.33 for the year 1958 and $54,470.68 for the year 1959 which exceeds in each year fifteen per cent (15%) of such gross income. Thus, the 1958 tax return of plaintiff should have reported a $69,185.33 depletion allowance deduction instead of the $90,391.66 and there being no tax liability for the year 1958, the plaintiff is entitled to carry-back the loss of $21,978.43 to its tax year of 1955 in which it had taxable income of $267,071.98 and on which it paid a tax of $132,889.73. The corrected tax for the year 1955 is $121,948.65 or an overpayment of $10,941.08. Thus, the 1959 tax return of plaintiff should have reported the $54,470.68 depletion allowance deduction instead of the $116,311.27 and there being no tax liability on an income loss of $2,074.33 for the year 1959, the plaintiff is entitled to carry-back the net loss of $54,470.68 plus $2,074.33 or $56,545.01 to its tax year of 1955 in which it had taxable income of $274,720.12 and on which it paid a tax of $137,354.46. The corrected tax for the year 1956 is $109,029.71 or an overpayment of $28,324.75.

 The Court has jurisdiction of the parties and of the subject matter of the action which was properly brought under Section 1346(a) (1). of the Judicial Code, Title 28 U.S.C.A. Section 1346(a) (1), and in conformity with Section 7422 of the Internal Revenue Code of 1954 and Regulation 301.6532–1 adopted and promulgated by the Commissioner of Internal Revenue pursuant thereto. The plaintiff has maintained its burden of proof by a preponderance of the evidence of all of the elements and the alleged facts of each element of the three counts of the amended complaint except for the amount of the depletion deductions as found and the resulting effect upon the refund claims of tax and interest paid and statutory interest. The plaintiff is entitled to the reasonable found allowance as a deduction from taxable income for the depletion of natural mineral deposits for the tax years in question under the Internal Revenue Code of 1954, Section 611, and implemented by Treasury Regulation 118, Section 39.23(m)–1(e) (3). The purpose of this allowance to plaintiff under the law is to permit a taxfree recovery of the capital value of the minerals removed from the deposit by plaintiff, that is, as an allowance for the exhaustion of plaintiff's capital assets. Under the Internal Revenue Code of 1954, Section 613, the plaintiff is permitted to compute the deduction under a formula commonly referred to as the "percentage" method of depletion computation. Under this method, plaintiff is allowed to deduct a specific percentage (fifteen per cent (15%)) of its "gross income from the property" from taxable income, subject to the limitations that the deduction shall not exceed fifty per cent (50%) of its "taxable income from the property", computed without allowance for depletion and the found facts disclose the claimed deductions do not exceed the fifty per cent (50%) of its taxable income from the property. The found facts disclose that the plaintiff in 1958 and 1959 sold and also processed a crude mineral product quarried from its property. The representative market or field price of like kind and grade of the stone as of the date of sale must be and was found to be plaintiff's gross income from the property.

 Defendant contends the found prices of the grades of stone are not representative as to the plaintiff and that the proportionate profits method should be employed to compute plaintiff's allowable depletion. It relies upon Treasury Regulation 1.613–3(c) (6), amended July 26, 1968, by T.D. 6965

which the United States Commissioner of Internal Revenue since its inception has intended to apply retroactively from and after January 1, 1954. See 31 F.R. 9506 and 33 F.R. 145. The regulation reads in part as follows:

"* * * It shall be presumed that a price is not a representative market or field price for the taxpayer's * * * mineral if the sum of such price plus the total of all costs of the nonmining processes * * * which the taxpayer applies to his * * * mineral regularly exceeds the taxpayer's actual sales price of his first marketable product * * *. In order to rebut the presumption * * * evidence must be produced to establish to the satisfaction of the district director that the loss on nonmining operations is directly attributable to unusual, peculiar, and nonrecurring factors rather than to the use of a market or field price which is not representative * * *."

Using the market prices found applicable for the years in question, there is no pattern of fabricating losses in the integrated quarry and milling business of plaintiff. A profit is shown in each of the ten years in the quarrying operation except for the years 1964, 1966 and 1968; in each of the ten years in the milling operation except for the years 1958, 1959, 1960, 1961 and 1968; and in each of the ten years in the total operations of the plaintiff except for the year 1959. There is no pattern of milling losses such as is referred to in the new regulation. Plaintiff in the years in question believed the entire market for semi-finished and finished stone was depressed. It exercised a business judgment in expectation of an improvement in the profitable demand for stone, closed one of its mills and maintained its other mills in operation in the belief that it would be less costly to plaintiff to operate them at a loss rather than close them down in the years in question. Plaintiff's actions and business judgment are equally applicable to others in the industry. The new regulation

is inapplicable to the facts of this case as the sum of such representative market or field cost price for plaintiff's crude mineral plus the costs of the nonmining processes does not and did not regularly exceed the plaintiff's actual sales price of its finished or semi-finished stone products. Furthermore, such new regulation has no retroactive effect upon the tax years in question. See Section 7805(b) Internal Revenue Code, 1954, which reads in part as follows with emphasis added:

"* * * The Secretary or his delegate may prescribe the extent, if any, to which any ruling or regulation, relating to the internal revenue laws, shall be applied *without retroactive effect*."

Section 7805(b) Internal Revenue Code, 1954, is substantially the same as contained in Section 3791(b) Internal Revenue Code, 1939. This section has been judicially interpreted to mean that the defendant may not apply a tax regulation retroactively where there is an existing regulation which is a reasonable interpretation of the same subject matter under the same statutory authority, especially, where as here, the United States Congress indicated its approval of an earlier regulation (Treasury Regulation 118, Section 39.23(m)–1(e) (3)) by its subsequent adoption of statutory authority relating to that regulation (Section 611 Internal Revenue Code of 1954, approved August 16, 1954) and where that regulation was made applicable to the new statutory authority during the tax years in question by reason of Section 7807, Internal Revenue Code, 1954. See Helvering v. R. J. Reynolds Tobacco Company (1939) 306 U.S. 110, 59 S.Ct. 423, 83 L. Ed. 536; Helvering v. Reynolds, 313 U. S. 428, 61 S.Ct. 971, 85 L.Ed. 1438; and Law of Federal Income Taxation, by Mertens, Chap. 3, Sec. 3.25, page 58. Furthermore, that part of the new regulation making it retroactive to the tax years in question is invalid and of no force and effect. Such retroactive application of the regulation violates the statutory mandate of Section 611, Internal

Revenue Code, 1954, that plaintiff is entitled to a reasonable allowance for depletion of its capital asset and to compensate the plaintiff for the diminution of its capital asset irrespective of plaintiff's profit or loss in its nonmining operations. See United States v. Cannelton Sewer Pipe Company (1960) 364 U. S. 76, 80 S.Ct. 1581, 4 L.Ed.2d 1581.

Judgment is hereby entered for the plaintiff and against the defendant upon the issues of count one of the amended complaint for the refund of the tax and interest paid the defendant in the sum of $25,047.99, plus statutory interest on $17,411.17 thereof from July 7, 1966, and on $7,636.82 thereof from July 22, 1966, as provided by Title 28 U.S.C. Section 2411(a); upon the issues of count two of the amended complaint for the refund of the tax paid the defendant in the sum of $10,941.08, plus statutory interest thereon from March 15, 1959, provided for by Title 28 U.S.C. Section 2411(a); and upon the issues of count three of the amended complaint for the refund of the tax and interest paid the defendant in the sum of $39,164.63, plus statutory interest on $28,324.75 thereof from July 7, 1966, and on $10,839.88 thereof from August 8, 1966, as provided by Title 28 U.S.C. Section 2411(a). The Clerk is directed to assess the costs of the action against the defendant.