COMMISSIONER OF INTERNAL REVE-
NUE v. GAMBRILL, and four other
cases.

Nos. 41, 257–259.

Circuit Court of Appeals, Second Circuit.

June 10, 1940.

Sewall Key, Acting Asst. Atty. Gen., and J. L. Monarch and Newton K. Fox, Sp. Assts. to Atty. Gen., for Commissioner of Internal Revenue in proceeding against respondent Gambrill.

Samuel O. Clark, Asst. Atty. Gen., and Sewall Key and Arthur A. Armstrong, Sp. Assts. to Atty. Gen., for Commissioner of Internal Revenue in proceedings against respondents Campbell, Knox, and Rogers.

Sidney W. Davidson, Ben R. Clark, and Allin H. Pierce, all of New York City, for respondent Gambrill.

James McCormick Mitchell, John L. Kenefick, and Ralph M. Andrews, all of Buffalo, N. Y., for respondents Campbell, Knox, and Rogers.

Before SWAN, AUGUSTUS N. HAND, and PATTERSON, Circuit Judges.

AUGUSTUS N. HAND, Circuit Judge.

The foregoing proceedings all involve the correctness of income tax assessments by the Commissioner of Internal Revenue and in each the Commissioner has appealed from decisions of the Board of Tax Appeals modifying his assessments.

In the Gambrill case the Commissioner assessed an income tax deficiency of $11,753.40 for the year 1930, while the Board of Tax Appeals determined that there was an overpayment of $75.60 by the taxpayer. In the Knox case the Commissioner assessed a deficiency for the same year of $35,645.83 while the Board determined that there was a deficiency of $42,842 (arising, however, from adjustments not here in issue). In the Campbell case the Commissioner assessed an income tax deficiency of $86,937.47 for the year 1933, and in the Rogers case a deficiency of $65,549.60 for the same year. The Board found that there was no income tax deficiency on the part of either Campbell or Rogers. We think that its orders in all four proceedings should be affirmed.

In each of the above cases the taxpayer involved was given a remainder interest in a trust created by will. Certain personal securities that were a part of the corpus of the particular trust were delivered by the trustee to the taxpayer after the right to possession became fixed by the termination of the prior beneficial estate. Some of these securities were acquired by the testator during his lifetime, some of them were purchased by the executor after the testator's death before setting up the trust, and some were purchased by the trustee after the trust was established. Securities derived by the trustee in the various ways mentioned were delivered by him to the taxpayer and sold by the latter.

In assessing income taxes upon alleged profits realized by the taxpayer the Commissioner used the following bases for computing gains: In the case of securities which had been owned by the decedent, their fair market value at the time when distributed by the executor to the trustee; in the case of securities purchased by the executor or trustee, the cost to such fiduciary; in respect to certain securities purchased by a fiduciary prior to March 1, 1913, as in Gambrill's case, the value on that date, whenever cost was unknown. The Board of Tax Appeals, however, took the view that, because of the provisions of Section 113 (a) (5) of the Revenue Acts of 1928 and 1932, 26 U.S.C.A. Int.Rev.Acts pages 380, 515, the proper basis in all cases was the fair market value of the

securities at the "time of the distribution to the taxpayer" by the trustee, no matter when or how the trustee or the executor might have derived the particular securities.

In determining how long a taxpayer had held securities for the purpose of computing capital gain or loss under Section 101 of the Revenue Act of 1928, 26 U.S.C. A. Int.Rev.Acts, page 370, the Board used the dates of delivery of the securities by the trustee to the taxpayer. The Commissioner, on the other hand, used the date of the death of the testator as the beginning of the period of holding securities owned by the latter and the date of purchase by the fiduciary as the beginning in cases where securities were purchased by the executor or trustee.

■ We agree with the conclusion of the Board that Sections 113 (a) (5) of the Revenue Acts of 1928 and 1932 govern the computation of loss or gain in the cases before us. The pertinent provisions read as follows:

"(a) *Property Acquired After February 28, 1913.* The basis for·determining the gain or loss from the sale or other disposition of property acquired after February 28, 1913, shall be the cost of such property; except that—

* * *

"(5) *Property Transmitted at Death.* If personal property was acquired by specific bequest, or if real property was acquired by general or specific devise or by intestacy, the basis shall be the fair market value of the property at the time of the death of the decedent. If the property was acquired by the decedent's estate from the decedent, the basis in the hands of the estate shall be the fair market value of the property at the time of the death of the decedent. In all other cases if the property·was acquired either by will or by intestacy, the basis shall be the fair market value of the property at the time of the distribution to the taxpayer. In the case of property transferred in trust to pay the income for life to or upon ·the order or direction of the grantor, with the right reserved to the grantor at all times prior to his death to revoke the trust, the basis of such property in the hands of the persons entitled under the terms of the trust instrument to the property after the grantor's death shall, after such death, be the same as if the trust instrument had been a will executed on the day of the grantor's death; * * *."

None of the securities involved in the cases before us were acquired "by specific bequest" or were "acquired by the decedent's estate from the decedent". They were all directly acquired from testamentary trustees. Accordingly the basis was not "the fair market value of the property at the time of the death of the decedent". Therefore the third clause of Section 113 (a) (5) which embraces "all other cases" of property acquired by will is controlling. That clause provides that: "In all other cases if the property was acquired either by will or by intestacy, the basis shall be the fair market value of the property at the time of the distribution to the taxpayer."

The words "the property" in the foregoing sentence seem inevitably to. relate to the particular property sold by the taxpayer to whom it was distributed by the trustee. The term "taxpayer" is defined by Section 701 (a) (13) of the Revenue Act of 1928 and section 1111 (a) (14) of Revenue Act 1932, 26 U.S.C.A. Int.Rev.Code, § 3797 (14) as "any person subject to a tax imposed by this Act [title]." It is hard to imagine language which would more clearly fix the basis for computing the gain or loss realized upon the sales of the securities with which the Commissioner had to deal than the words "fair market value of the property at the time of the distribution to the taxpayer."

Perhaps the most strenuous objection made by the Commissioner to adopting what seems to be the clear meaning of the statute is that increment in value between the date of the decedent's death and the time of distribution to the taxpayer is not subjected to taxation when the securities are sold and thus tax resources are impaired. But it is frequently true that increments are not subjected to taxation. One common case·where increment in value is disregarded is that which occurs during the lifetime of an owner of securities which are not sold by him but are sold after his death by his executors, administrators, trustees or remaindermen under his will. Such an increment accruing during the lifetime of the owner of securities has never been taken into account in computing gain or loss upon sales after his death. Increment between the date of death of the owner of securities and the date of distribution by an executor to a

legatee is also to be disregarded under the third clause of Section 113 (a) (5) in the case of distribution of securities which are transmitted by virtue of a general bequest.

The supposed loss in revenue due to a disregard of fluctuations in the market value of securities between the date of death and the time of distribution is moreover somewhat fanciful, for in all cases where the property depreciates in value between the date of death and the date of distribution a larger tax would result from fixing the basic value at "the time of the distribution to the taxpayer" than from fixing the basis at the time of the testator's death.

The further contention of the Commissioner that the word "taxpayer" as used in the third clause of Section 113 (a) (5) should be construed as meaning the "trustee" and that the phrase "time of the distribution to the taxpayer" ought to be interpreted as meaning "the date when the executors transferred the property to the trustees", seems to us without warrant. The taxpayers here are undoubtedly the respondents. The trustees are separate entities and as such are neither agents of the respondents nor mere passive fiduciaries. It is true that under certain circumstances they might themselves have become taxpayers in respect to the corpus of their trusts, but only in case they had made sales of some of the securities composing the corpus—not, as here, when without making any sales they wound up their trusts and distributed the corpus to remaindermen. To treat the trustee and beneficiary-remainderman, as the Commissioner wishes us to do, as a "sort of dual tax personality" is to disregard the plain language of the statute and to adopt a concept which seems to us to defy analysis. In view of the clear terms of the third clause of Section 113 (a) (5) it can make no difference whether the interest of any remaindermen be vested, vested subject to be divested, or contingent. In either event the basis should be "the fair market value at the time of the distribution to the taxpayer", i.e., to the respondent whose income taxes are being reviewed, and not to the trustee.

In respect to the securities purchased either by the executors or trustees the Commissioner says they do not come within the third clause of Section 113

(a) (5) because they were not acquired by will. This requires a most technical interpretation of the clause and one that in our opinion is not sound even technically. Any property distributed by a trustee which is part of the corpus of the trust is acquired through and by virtue of the will. Through the will the remaindermen derived all their interests and without it they would have had no standing and would have received nothing. Lyeth v. Hoey, 305 U.S. 188, 194, 195, 59 S.Ct. 155, 83 L.Ed. 119, 119 A.L.R. 410.

It is further argued that the Senate Report in respect to the enactment of Section 113 (a) (5) in the 1928 Act justified the Commissioner's interpretation of the statute. In dealing with the third clause the report said: "It would also apply in cases where the executor purchases property and distributes it to the beneficiary". There is, however, no reason because of this mention of purchases by the executor for limiting the application of the report to property so purchased. In cases where a trust has been created by will the executor will often act as trustee before the trust is actually set up and sometimes will sell and purchase securities on behalf of the trust. Indeed the statement in the Senate Report would not cover the particular facts before us except in situations where the executor so acted.

The Commissioner apparently contends that the decision in Brewster v. Gage, 280 U.S. 327, 50 S.Ct. 115, 74 L.Ed. 457, fixing the date of death as the time when property should be valued under the provisions of the Revenue Act of 1921, 42 Stat. 227, for the purposes of computing gain or loss, affords some guide in interpreting Section 113 (a) (5). The difficulty in maintaining such a contention is that Section 113 (a) (5) is specific, that it fixes a different date for valuing acquisitions of property from that of the Act of 1921, and that the opinion in Brewster v. Gage says at page 337 of 280 U.S., at page 118 of 50 S.Ct., 74 L.Ed. 457: "The deliberate selection of language so differing from that used in the earlier acts indicates that a change of law was intended."

In United States v. Van Nostrand, 94 F.2d 510, and Commissioner v. Libbey, 100 F.2d 458, the Court of Appeals, of the First Circuit held that the basis for computing gain or loss to the taxpayer was the market value of the property at the time of

distribution by the trustee to the remaindermen, and not the value at the time of distribution by the executor to the trustees. These decisions, rather than that of the Seventh Circuit in Commissioner v. Maguire, 7 Cir., 111 F.2d 843, rendered on March 5, 1940, are in accord with our view.

The second question is whether the securities passing to the respondents Gambrill and Knox were held by them for more than two years and hence whether any gain or loss realized by the sale was taxable not as ordinary income or loss but as a capital gain or loss because the securities were "capital assets" as defined in Section 101 (c) (8) and (B) of the Revenue Act of 1928, 26 U.S.C.A. Int.Rev.Acts, pages 371, 372. The Board held that they were not, and they plainly were not unless the period during which they were held by the trustees can be added to the period between the date of distribution to the taxpayers and the date of sale. There cannot be any such tacking because the property, when held by the respective respondents, did not have "for the purpose of determining gain or loss from a sale * * *, the same basis * * * in his hands as it would have in the hands" of the trustees.

On behalf of the Commissioner it is argued that the decision of the Supreme Court in McFeely v. Commissioner, 296 U. S. 102, 56 S.Ct. 54, 80 L.Ed. 83, 101 A.L.R. 304, requires us to find that the securities had been held from the date of death and that they, therefore, were held for more than two years prior to sale. That decision, however, involved an estate where there was no trust. The court only decided that the general legatee held the securities which were transferred to him by the executor from the date of death. We agree with the Board that the intervening trusts broke the continuity so that the taxpayer only held the securities from the time they were distributed to him.

In the Campbell case certain Woolworth stock was purchased by the taxpayer prior to distribution to her by the trustee of other shares of the same kind. If she did not hold the shares she acquired under the will until they were distributed to her by the trustee, under the "first-in-first-out" rule, her own shares should be treated as sold prior to those which were delivered to her by the trustee. We agree with the

Board that her own shares must be regarded as sold first. During the time that the title to the shares remained in the trustee the taxpayer had no control over their disposition and they were not acquired until she obtained them as her own. Helvering v. San Joaquin Fruit & Investment Co., 297 U.S. 496, 56 S.Ct. 569, 80 L.Ed. 824.

The orders of the Board of Tax Appeals are affirmed.