HELVERING, COMMISSIONER OF INTERNAL REVENUE, *v.* CAMPBELL.*

No. 473. Argued March 6, 1941.—Decided March 31, 1941.

*Together with No. 474, *Helvering, Commissioner of Internal Revenue,* v. *Knox,* and No. 475, *Helvering, Commissioner of Internal Revenue,* v. *Rogers,* also on writs of certiorari, 311 U. S. 639, to the Circuit Court of Appeals for the Second Circuit.

16

*Miss Helen R. Carloss* argued the cause, and *Solicitor General Biddle, Assistant Attorney General Clark,* and *Messrs. Sewall Key, Thomas E. Harris,* and *Arthur A. Armstrong* were on the brief, for petitioner.

*Mr. Ralph M. Andrews,* with whom *Messrs. Daniel J. Kenefick* and *John L. Kenefick* were on the brief, for respondents.

MR. JUSTICE DOUGLAS delivered the opinion of the Court.

The questions presented by these cases are in part related to and in part the same as those involved in *Maguire* v. *Commissioner, ante,* p. 1, and *Helvering* v. *Gambrill, ante,* p. 11.

The father of these respondents died in 1915. By his will it was provided that his residuary estate should be divided into four parts. One part was devised and bequeathed to trustees: "To receive, hold and, from time to time, invest and reinvest the same, and to collect the rents, income, issues, and profits on the property from time to time constituting such trust fund and to pay over so much of the net income arising therefrom, as to my said trustees shall seem wise and proper toward the support, maintenance, and education of my daughter, Marjorie Knox, until she shall arrive at the age of twenty-one (21) years, and to accumulate the balance of the income during her minority for her benefit, and to pay over the accumulated income to her when she shall arrive at the age of twenty-one (21) years and thereafter to pay over the entire net income to my said daughter, Marjorie Knox, until she shall arrive at the age of twenty-eight (28) years, at which time, I give, devise, and bequeath to my said daughter, Marjorie Knox, one-half (½) of the property then constituting said trust fund and I direct my said trustees to pay over the net income on the remaining one-half (½) of said trust fund until she shall arrive at the age of thirty-five (35) years, at which time I give, devise, and bequeath the remaining part of said trust fund to my said daughter, Marjorie Knox, and to her heirs and assigns forever. In the event that my said daughter, Marjorie Knox, shall die before reaching the age of thirty-five (35) years, I give, devise, and bequeath any part or portion of said trust fund, which has not then been paid over to her, or to the possession of which at the time of her death she was not entitled, unto the issue of said Marjorie Knox, if any, surviving her, to be divided among them, share and share alike. And in case there be no issue her surviving, then I give, devise, and bequeath said trust fund unto her heirs."

18

Marjorie Knox is respondent Marjorie K. Campbell. Another part of the residuary estate was placed in trust for respondent Dorothy K. G. Rogers, under the same terms. And a third part together with certain securities was placed in trust for respondent Seymour H. Knox, under similar terms. He, however, was to receive $500,-000 of the trust fund when he reached the age of twenty-five, one-half of the remaining trust fund when he became thirty, and the balance at thirty-five. Meanwhile, the income was payable to him. On July 1, 1921, the executors, pursuant to an order of the probate court, transferred the property to the trustees.

Marjorie K. Campbell attained the age of twenty-eight on July 10, 1928, and received at that time one-half of the property of her trust. Certain of the securities which she then received were sold by her during 1933 and certain of the bonds matured and were paid during 1933. Some of those securities had been held by her father at his death, others had been purchased by the executors, and some had been purchased by the trustees. In 1926 and 1927 she purchased stock of the F. W. Woolworth Co., which with dividends received in 1927 amounted to 1000 shares. In 1928 she received delivery from the trustees of 15,000 shares of Woolworth stock which represented shares owned by her father at his death, a subsequent tax-free stock split-up, stock dividends, and purchases by the trustees. In 1929 she surrendered the 16,000 shares she owned and received tax free 40,000 shares pursuant to a split-up of the stock. In 1933 she sold 10,000 of the shares received in 1929. There is no way of identifying the shares sold with any particular shares surrendered in 1929.

Dorothy K. G. Rogers became twenty-eight on August 26, 1924, and thirty-five on August 26, 1931, at which times she received distributions of the corpus. During

1933 she sold securities so received. Some of those securities had been purchased by the trustees, some by the executors, and others had been owned by her father at his death.

Seymour H. Knox attained the age of thirty on September 1, 1928, and received on that date one-half of the corpus, including 8,575 shares of stock of Maine Share Corp., of which 5,160 were purchased by the trustees on August 31, 1927, and 3,415 were purchased by the trustees on August 30, 1928. He later exchanged those shares in a non-taxable transaction and on June 10, 1930, sold the shares received in that exchange.

The Board of Tax Appeals[1] and the Circuit Court of Appeals (112 F. 2d 530) held: (1) that the basis to respondents under § 113 (a) (5) of the Revenue Acts of 1928 and 1932[2] as respects sales made by them was the fair market value at the time when the securities were delivered to them by the trustees, no matter when or how the trustees or the executors may have obtained the securities; (2) that in determining how long respondent Knox held securities for purposes of computing the term of his holding under § 101 of the Revenue Act of 1928, the date of transfer from the trustees should govern; and (3) that as respects the sale of Woolworth stock by respondent Campbell, her own shares should be treated, under the "first-in-first-out" rule, as sold prior to those which were delivered to her by the trustees.

It follows from our holding in *Maguire* v. *Commissioner, supra,* that the rulings on the first issue were erroneous. As respects the securities owned by the decedent at death, the basis is their value when delivered

---

[1] The opinion of the Board in *Helvering* v. *Campbell* is reported in 39 B. T. A. 916; its opinions in the other two cases are unreported.

[2] Sec. 113 (a) (5) of the 1932 Act (47 Stat. 169, 199) was the same as § 113 (a) (5) of the 1928 Act (45 Stat. 791, 819).

by the executors to the trustees. As respects the securities purchased by the trustees, the basis is cost to the trustees. And we are of the view that as respects securities purchased by the executors the basis is the value when delivered by them to the trustees. As we said in *Maguire* v. *Commissioner, supra,* the legislative history of § 113 (a) (5) clearly indicates that it applies to purchases by executors. Hence it follows from our reasoning in *Maguire* v. *Commissioner, supra,* that the date of delivery by the trustees to the beneficiaries is no more appropriate here than it is in case of property owned by the decedent at date of death.

We also disagree with the court below on the second issue. Some of the securities were sold by respondent Knox more than two years after they had been purchased by the trustees.[3] For the reasons stated in *Helvering* v. *Gambrill, supra,* it follows, therefore, that they had been "held" by him for more than two years within the meaning of § 101 (c) (8).

We also take a different view on the third proposition. The "first-in-first-out" rule is reflected in Treasury Regulations. The general rule[4] is that, where shares of stock cannot be identified with any particular lots purchased,

---

[3] On this phase of the cases no question is presented as to securities purchased by executors.

[4] Art. 58, Treas. Reg. 77, promulgated under the 1932 Act provides:

"Sale of stock and rights.—When shares of stock in a corporation are sold from lots purchased at different dates or at different prices and the identity of the lots cannot be determined, the stock sold shall be charged against the earliest purchases of such stock. In the determination of the earliest purchases of stock the rules prescribed in subparagraphs (A), (B), (C), and (D) of section 101 (c) (8) (relating to the period for which property has been held) shall be applied. . . ."

And see Art. 600 (4) dealing with stock or securities distributed in reorganization.

they will be charged against the earliest purchases.[5] For the purpose of determining the earliest purchases the regulation [6] adopts the rule of tacking contained in § 101 (c) (8) (B). That being true, it must be presumed that the Woolworth stock coming from the decedent's estate was first sold. The holding by the trustees is included in that of the beneficiary. Hence, as we indicated in *Helvering* v. *Gambrill, supra,* the date of acquisition by the beneficiary was the date of death. It is that date of acquisition which governs the application of the "first-in-first-out" rule. Therefore, the court below was in error in ruling that respondent Campbell's own shares were sold first.

Respondents have contended, at least in regard to some of these issues, that the nature of their remainder interests necessitates a different result. Thus, in case of respondent Knox it is strongly urged that in view of the conditional nature of his remainder interest he held the securities only from the date when his interest became indefeasible and the securities were distributed to him, since one cannot be deemed to have held or acquired property which he might never obtain. But unlike the situation in *Helvering* v. *Hallock,* 309 U. S. 106, we are not concerned here with the question as to when the transfers took effect for purposes of the estate tax. As we indicated in *Maguire* v. *Commissioner, supra,* we are

---

[5] The regulations refer only to "purchases." But no question has been raised as to their application to shares acquired under a will. In fact, the Board of Tax Appeals stated (39 B. T. A. 916, 919) that the "parties are in agreement that the first in, first out rule must be applied, since the shares which the petitioner sold can not be identified as those purchased at any particular time." Furthermore, respondent concedes here that the rule should not be limited to securities which have been bought as distinguished from those which have been otherwise obtained.

[6] Art. 58, *supra* note 4.

dealing only with a point of reference and a standard of value for determination of gains or losses realized on subsequent sales of property acquired by bequest, devise, or inheritance. For that purpose distinctions between vested and contingent remainders or between absolute and conditional property interests have no relevancy. Each remainderman has become the taxpayer because he has obtained possession and control of the property and has sold it. While the property is held in trust, the vested remainderman has no more rights of possession and control than the contingent remainderman. Yet each has acquired a property interest. The statutory provisions here in question come into play when that interest later ripens into full ownership and a sale is made. Hence the value of the property at the time when the taxpayer first acquires an interest in it has relevance to a subsequent determination of the gains or losses. As we remarked in *Maguire* v. *Commissioner, supra,* the residuary legatee in *Brewster* v. *Gage,* 280 U. S. 327, was held to have acquired his interest at date of death though at that time it was not absolute. To be sure, in these cases the interest of the remaindermen in the property at the earlier time was limited by the very terms of the bequest. But the tax here in question is not on their remainder interests; it is on gains realized by them as owners of that property. Hence, to carry into that computation the earlier value of the property is not to tax them on values which they never received. It merely provides a rule of thumb in alleviation of a tax which would be computed by reference to the entire amount of the original inheritance were it to be based on cost to the taxpayer.

*Reversed.*

The CHIEF JUSTICE and MR. JUSTICE ROBERTS think the judgments should be affirmed for the reasons stated by the court below, 112 F. 2d 530.