Walter BRANDEIS and Gladys Brandeis,
Appellants,

v.

UNITED STATES of America,
Appellee.

Loyal B. COHN and Lorene R. Cohn,
Appellants,

v.

UNITED STATES of America,
Appellee.

Nos. 15858, 15859.

United States Court of Appeals
Eighth Circuit.

Jan. 22, 1958.

Ralph E. Svoboda, Omaha, Neb. (Robert L. Berry, and Eugene L. Radig, Omaha, Neb., were with him on the brief), for appellants.

Louise Foster, Attorney, Department of Justice, Washington, D. C. (Charles K. Rice, Asst. Atty. Gen., and Lee A. Jackson and Melva Graney, Attys., Department of Justice, Washington, D. C., and William C. Spire, U. S. Atty., Omaha, Neb., were with her on the brief), for appellee.

Before SANBORN and VAN OOSTERHOUT, Circuit Judges, and WEBER, District Judge.

VAN OOSTERHOUT, Circuit Judge.

These are appeals from final judgments dismissing separate suits by Walter Brandeis and Loyal B. Cohn for refund of income taxes paid for the years 1949 and 1950.[1] Timely claims for refund were filed and denied. Jurisdiction is established. The same mate-

---

[1] The wives of Walter Brandeis and Loyal B. Cohn are made parties because joint tax returns were filed. Since the husbands inherited the stock here involved, we shall for the purposes of this opinion refer to the husbands as the taxpayers.

rial facts and the same issues are involved in each of these appeals.

Walter Brandeis and Loyal B. Cohn each acquired a substantial block of J. L. Brandeis & Sons Corporation stock by virtue of the provisions of the will of their uncle, Hugo Brandeis. They sold such stock in 1949. The sale price is undisputed. The controversy centers upon the determination of the basis to be used in computing long term capital gain for income tax purposes.

Section 113(a)(5) of the Internal Revenue Code of 1939, 26 U.S.C.A. § 113 (a)(5), provides that the basis of property acquired by bequest "shall be the fair market value of such property at the time of such acquisition." All parties agree that the statute just quoted controls. The sole issue involved on these appeals is the determination of the time of acquisition of the stock sold.

The District Court, upholding the Government's contention, determined that the taxpayers acquired the stock within the meaning of section 113(a) (5) on the date of the death of the testator, Hugo Brandeis, to wit, July 21, 1912. If the court is right in such determination, the parties agree that since such date is prior to March 1, 1913, the effective date of the income tax laws, the applicable basis under section 113 (a)(14) would be the March 1, 1913, value. Subject to the taxpayers reserving the right to appeal from the court's determination that March 1, 1913, was to be used as the valuation date, the March 1, 1913, value of the stock has been stipulated, and tax has been paid using the March 1, 1913, value as the basis. The Brandeis stock has substantially increased in value since March 1, 1913, and if some subsequent date is to be used as the basis a substantial tax refund would be due.

Taxpayers contend that the time of acquisition of the stock by them was July 29, 1946, the date of the death of Lyela Brandeis, the widow of Hugo Brandeis, who was given a life estate in the stock. They base such claim upon the fact that the Supreme Court of Nebraska in Brandeis v. Brandeis, 150 Neb. 222, 34 N.W.2d 159, determined that it was the intention of the testator, Hugo Brandeis, that, in the event either or both of his brothers who were given a remainder interest in the stock died before the death of the testator's widow, Lyela, the share given to any brother so dying should go to the lawful male heirs of such brother, determined as of the date of the death of the life tenant, Lyela Brandeis. Giving effect to such expressed intention, the Nebraska court held taxpayers each took a ⅛ interest in the stock as a male heir of testator's deceased brother Emil by reason of meeting the test of being a lawful male heir of Emil at the time of Lyela Brandeis's death in 1946. Taxpayers state that the acquisition of the stock was the result of the determination of heirship of a person other than the testator, to wit testator's brother Emil, and that such determination was to be made as of the date of the death of the testator's widow, and hence the doctrine of "relation back" is not applicable. Taxpayers assert that they had no interest at all in the stock prior to the death of Lyela Brandeis in 1946, but at most had a bare expectancy.

The pertinent facts as summarized by Judge Donohoe in his unpublished opinion are:

"In 1901, the J. L. Brandeis & Sons Corporation was formed and the stock issued to J. L. Brandeis and his sons in the following proportions:

| | |
|---|---|
| J. L. Brandeis | 1,000 Shares |
| Arthur Brandeis | 1,000 Shares |
| Emil Brandeis | 1,000 Shares |
| Hugo Brandeis | 500 Shares |

"J. L. Brandeis had only one other child, a daughter, Sarah Brandeis Cohn. When J. L. Brandeis died his stock was distributed equally between his three sons; consequently Hugo Brandeis increased his holdings to 833⅓ shares. These 833⅓ shares, as increased by nontaxable stock split-ups, are the subject of concern.

"On July 21, 1912, Hugo Brandeis died leaving a validly executed and probated will which contained the following provision relating to his Brandeis stock:

"'I give and bequeath to my beloved wife, Lyela Brandeis, for her sole use and benefit during her natural life, all of the capital stock of J. L. Brandeis & Sons, now owned by me and hereafter acquired; and, at her death, said stock shall pass to and vest absolutely in my brothers, Arthur D. Brandeis and Emil Brandeis, in equal proportions. Should either of my said brothers die during the life-time of my wife, his lawful male heirs, as of the date of her death, shall take his share.'

"Emil Brandeis predeceased Hugo Brandeis and left neither a widow nor issue. Consequently Arthur Brandeis assumed that he was exclusively entitled, under Hugo's will, to the remainder interest in the stock. He purchased the life interest that Lyela Brandeis had and the 833⅓ shares of stock were reissued in his name. Arthur Brandeis died on June 10, 1916, and J. L. Ervine Brandeis, who is still alive, claimed as Arthur's heir and the stock was reissued in the name of J. L. Ervine Brandeis.

"Sarah Brandeis Cohn died October 31, 1936, and left two sons, Walter Brandeis and Loyal B. Cohn, who are still living. When Lyela Brandeis died on July 29, 1946, Walter Brandeis and Loyal B. Cohn instituted an action to establish the right of each of them under Hugo Brandeis' will, to one-sixth of the 833⅓ shares of stock originally held by Hugo Brandeis. The other two-thirds, they conceded, rightfully belonged to J. L. Ervine Brandeis, who claimed all 833⅓ shares. The action was terminated by a decision of the Supreme Court of Nebraska holding that within the beforequoted provision of Hugo Brandeis' will, J. L. Ervine Brandeis, Loyal B. Cohn and Walter Brandeis were the lawful male heirs of Emil Brandeis on the death of Lyela Brandeis and were entitled to share and share alike one-half of the 833⅓ shares of stock; the other one-half concededly belonging exclusively to J. L. Ervine Brandeis. Brandeis v. Brandeis, 150 Neb. 222, 34 N.W.2d 159."

We agree with the taxpayers that they acquired no vested interest in the stock at the time of Hugo Brandeis's death. As taxpayers point out, many uncertain events had to occur before they could come into possession of the stock, among them: (a) the death of Arthur Brandeis prior to the death of Lyela Brandeis (Arthur Brandeis would during his lifetime be the sole male heir of his deceased brother Emil); (b) the death of Sarah Brandeis Cohn, the taxpayers' mother, prior to the death of Lyela Brandeis (The taxpayers could not be heirs of their uncle Emil under Nebraska law as long as their mother survived); (c) Taxpayers had to outlive the life tenant, Lyela Brandeis, in which event the portion they would take would depend upon the number of male heirs surviving the life tenant.

However, the foregoing events did all occur, and taxpayers each ultimately, by virtue of the provisions of the will of Hugo Brandeis, obtained full title to ⅙ of the Brandeis stock owned by Hugo Brandeis at the time of his death.

The decision in these cases turns upon the meaning of the words "the time of such acquisition" as they appear in section 113(a)(5). Section 29.113(a)(5)–1 of Treasury Regulations 111, promulgated under the Internal Revenue Code of 1939, provides in part:

"Sec. 29.113(a) (5)–1. *Basis of Property Acquired by Bequest, Devise, Or Inheritance.*

\*  \*  \*  \*  \*  \*

"(b) *Basis* \* \* \*

"(1)  \*  \*  \*  Since, under the law governing wills and the distribution of the property of decedents, all titles to property acquired by bequest, devise, or inheritance relate back to the death of the decedent, even though the interest of him who takes the title was, at the date of the death of the decedent, legal, equitable, vested, contingent, gener-

al, specific, residual, conditional, executory, or otherwise, the time of the acquisition of such property is the death of the decedent. * * "

The regulation just quoted is in substance the same as Article 113(a)(5)-1(b) of Treasury Regulations 86, promulgated under the 1934 Act, which is the regulation considered by the Supreme Court in Helvering v. Reynolds, 313 U.S. 428, 61 S.Ct. 971, 85 L.Ed. 1438. In the Reynolds case the Court concedes that the word "acquisition" in its statutory setting is ambiguous. The legislative history of the applicable statute is considered and prior interpretations of the statute are discussed. In upholding the regulation as a proper interpretation of the words "time of such acquisition," as appearing in section 113(a)(5), the Court states (313 U.S. at pages 433–434, 61 S.Ct. at page 973):

"* * * The definition of 'acquisition' contained in the regulation is not a strained or artificial one. * * * So the test in this type of case is not whether respondent had full enjoyment of the property prior to the delivery of the securities to him but whether he earlier had acquired an interest which ultimately ripened into complete ownership. Respondent has become the taxpayer because he has obtained full ownership of the property and has sold it. The tax is on gains, if any, realized by him in that transaction. Hence, as we indicated in the Maguire [Maguire v. Commissioner, 313 U.S. 1, 61 S.Ct. 789, 85 L.Ed. 1149] and Campbell cases [Helvering v. Campbell, 313 U.S. 15, 61 S.Ct. 798, 85 L.Ed. 1159], to carry into that computation the value of the property at the time the taxpayer had only a contingent remainder interest in it is not to tax him on values which he never received. The statute as thus interpreted 'merely provides a rule of thumb in alleviation of a tax which would be computed by reference to the entire amount of the original inheritance were it to be based on the

cost to the taxpayer.' Helvering v. Campbell, supra, 313 U.S. at page 22, 61 S.Ct. at page 802, 85 L.Ed. 1159. As stated by Judge Arant in Augustus v. Commissioner, 6 Cir., 118 F.2d 38, 43, the regulation was an 'apt interpretation to make this part of the statute fit efficiently and consistently into the scheme of the revenue system as a whole.' See Maguire v. Commissioner, supra.

"Respondent's suggestion that the regulation does not cover this case will not stand analysis. It has a broad sweep and embraces all interests which have their origin in a bequest, devise, or inheritance."

The trial court took the position that the Reynolds case controlled upon the disputed issue in these cases. We agree.

Additional support for the result we reach is found in Augustus v. Commissioner, 6 Cir., 118 F.2d 38; Van Vranken v. Helvering, 2 Cir., 115 F.2d 709. In said cases attention is called to the fact that the interpretation made by the regulations makes the statute fit consistently into the scheme of the revenue system as a whole. The decedent's estate pays a tax based upon the value of the assets on the date of decedent's death. The statute as construed by the regulations makes provision for the taxing of the increase in value occurring subsequent to the decedent's death. Under the interpretation insisted upon by the taxpayers, no provision would exist for taxing the increase in value subsequent to decedent's death to anyone.

In Helvering v. Campbell, 313 U.S. 15, 61 S.Ct. 798, 85 L.Ed. 1159, the issue involved was the basis to be used in determining the gain or loss from the sale of property acquired by bequest. The Court states (313 U.S. at pages 21–22, 61 S.Ct. at page 802):

"* * * we are dealing only with a point of reference and a standard of value for determination of gains or losses realized on subsequent sales of property acquired by bequest, devise, or inheritance. For that purpose distinctions between

vested and contingent remainders or between absolute and conditional property interests have no relevancy. Each remainderman has become the taxpayer because he has obtained possession and control of the property and has sold it. * * * "

In Helvering v. Hallock, 309 U.S. 106, 117, 60 S.Ct. 444, 84 L.Ed. 604, a case involving estate tax, the Court calls attention to the wide diversity of opinion expressed by the courts in construing instruments creating remainders and other common law property interests, and states that the bringing of such controversies into the administration of tax laws would preclude a fair and workable tax system. See also Van Vranken v. Helvering, supra.

Taxpayers in their brief state, "We do not, however, wish to be regarded as assailing the Treasury Regulation. It has already been upheld in Helvering v. Reynolds * * * as applied to the facts of that case." They then go on to say that the regulation can not be construed to contradict the statute which it interprets. We have no quarrel with taxpayers' contention that a regulation can not be construed to contravene the applicable statute. However, such is not the situation here. As previously pointed out, the Supreme Court in the Reynolds case, supra, determined that the regulation properly construes the statute with respect to "time of such acquisition."

In our present cases, as in the Reynolds case, it was because of the provisions of the will that the taxpayers acquired the property and became the taxpayers. The taxpayers have realized the full gain in value of the stock that has accrued since March 1, 1913. If the gain is not taxed to the taxpayers here, it will not be taxed to anyone. It seems reasonably clear that Congress intended the recipient of a devise or inheritance to pay the tax on the gain accruing since the decedent's death regardless of whether the interest created by the will in the taxpayers was originally vested or contingent or otherwise uncertain.

There is nothing about the Nebraska decision establishing taxpayers' rights in the stock which requires a contrary result. The Commissioner has recognized the ownership of the stock as established by the Nebraska court.

We have here before us for construction a federal revenue statute. The taxpayers do not challenge the right of Congress to tax the gain here involved. They concede that if Congress had used the words "date of the decedent's death," found in section 1014 of the Internal Revenue Code of 1954, 26 U.S.C.A. § 1014, rather than the words "time of such acquisition," used in section 113(a) (5), the tax involved here would be due. Federal courts are authorized to construe federal statutes. The Reynolds case, supra, has approved the regulation interpreting the words "the time of such acquisition" as equivalent to the words "the date of the decedent's death." Hence, the change in the words of the applicable statute brought about no change in meaning. This is corroborated by the legislative history of section 1014. The House Ways and Means Committee Report on said section, 1954 U.S. Code Congressional and Administrative News, Vol. 3, p. 4407, reads in part:

"This section corresponds to section 113(a) (5) of the 1939 Code providing in substance that the basis of property acquired by bequest, devise, or inheritance or by the decedent's estate from the decedent is the fair market value of such property at the date of the decedent's death * * *."

Similar language appears in the Senate Report, id. at p. 5065.

We are satisfied that the trial court correctly determined that, under sections 113(a) (5) and 113(a) (14) of the Internal Revenue Code of 1939, the basis to be used in determining the long term capital gain realized by the taxpayers from the sale of the Brandeis stock acquired by them from the estate of Hugo Brandeis was the fair market value of the stock on March 1, 1913.

The judgments are affirmed.