Charles J. BACCIOCCO and Mary Jo Bacciocco, Plaintiffs-Appellants,

v.

UNITED STATES of America, Defendant-Appellee.

James B. O'DONNELL, Jr., and Nellie R. O'Donnell, Plaintiffs-Appellants,

v.

UNITED STATES of America, Defendant-Appellee.

Charles J. BACCIOCCO and James B. O'Donnell, Jr., Trustees, Plaintiffs-Appellants,

v.

UNITED STATES of America, Defendant-Appellee.

Nos. 14118–20.

United States Court of Appeals Sixth Circuit.

Feb. 6, 1961.

---

Charles B. Ginocchio, Cincinnati, Ohio (James B. O'Donnell, Jr., Dolle, O'Donnell, Cash, Fee & Hahn, and Charles B. Ginocchio, Ginocchio & Ginocchio, Cincinnati, Ohio, on the brief), for appellants.

Michael I. Smith, Dept. of Justice, Washington, D. C. (Charles K. Rice, Asst. Atty. Gen., Lee A. Jackson, Melva A. Graney, Michael I. Smith, Attys., Dept. of Justice, Washington, D. C., Hugh K. Martin, U. S. Atty., Dayton, Ohio, on the brief), for appellee.

Before McALLISTER, Chief Judge, and MILLER and WEICK, Circuit Judges.

SHACKELFORD MILLER, Jr., Circuit Judge.

The appeals in these three actions are from separate judgments of the District Court dismissing complaints seeking the recovery of income taxes for the year 1948, which appellants claim were erroneously and illegally assessed by the Commissioner of Internal Revenue and paid to the Collector. Each case involved a trust instrument executed in 1923 by William J. Williams for the benefit of one of his three sisters and the children of one of the sisters. Each trust was identical in its terms except for the different names of the sisters. Into each trust Williams transferred 400 shares of common stock of the Western & Southern Life Insurance Company. In each case the tax complained of was by reason of the long term capital gain resulting from a disposition of the stock in the year 1948. The particular controversy involves the correct base valuation of the stock for the purpose of computing the long term capital gain. Since the terms of the trust instruments and the corpus of each estate are identical, the three cases can be disposed of by this one opinion.

The facts were stipulated and the cases were heard by the District Court without the intervention of a jury. On January 18, 1923, William J. Williams executed a declaration of trust under which he transferred to Charles F. Williams, Trustee, 400 shares of stock of the Western & Southern Life Insurance Company. By the terms of the instrument the Trustee was directed to collect the cash dividends and, after paying certain expenses, turn the remainder over immediately to Mary E. Williams, sister of William J. Williams, during the term of her natural life. Upon the death of Mary E. Williams, the Trustee was directed to deliver said stock to William J. Williams, if living, and if not then living, to pay the cash dividends to Mary Josephine Runnells and Nellie Catherine Runnells, children of Clara W. Runnells, who was also a sister of the creator of the trust, share and share alike, until said Nellie Catherine Runnells reached the age of 25, at which time the Trustee was directed to deliver to each of Mary Josephine Runnells and Nellie Catherine Runnells 200 shares of said stock. Should either of said Runnells girls die subsequent to

William J. Williams without issue surviving and before Nellie Catherine Runnells attained her 25th birthday, the survivor was to receive all of said cash dividends and to become entitled to the entire 400 shares. Should either of said Runnells girls die subsequent to William J. Williams, before Nellie Catherine's 25th birthday, survived by issue, said issue was to receive from the Trustee all the rights and benefits which would have accrued to their parent had she lived until the 25th birthday of Nellie Catherine. Should both Runnells girls die without issue surviving subsequent to the death of William J. Williams, before said 25th birthday of Nellie Catherine, said 400 shares of stock were to be turned over to the estate of William J. Williams. This trust is referred to as the Mary E. Williams Trust.

The other two trusts were identical in terms with this trust, with the exception that in one of them Annie J. Williams, a different sister of the creator, was given the life interest instead of Mary E. Williams, and in the other trust another sister, Clara W. Runnells, was given the life interest instead of Mary E. Williams. These trusts are referred to as the Annie J. Williams Trust and the Clara W. Runnells Trust, respectively.

At the time of the execution of these three instruments, the basis for each batch of 400 shares of stock in the hands of William J. Williams was $36,000.00.

On November 24, 1930, William J. Williams died. On that date each batch of 400 shares of stock had increased to 2,000 shares by way of stock split-ups and stock dividends. As of that date the fair market value of each batch of 2,000 shares was $300,500.00.

On February 28, 1931, Mary E. Williams died.

During June and July 1932 a dispute between the Commissioner of Internal Revenue and the Executor of the estate of William J. Williams, concerning numerous matters involving the amount of federal estate tax to be paid by his estate, was settled. The Executor had originally contended that the stock in the trust estates was not to be included as part of the assets of Williams' estate for federal estate tax purposes. The settlement included each batch of 2,000 shares of stock as a taxable unit of his estate and valued each batch for federal estate tax purposes at a fair market value of $300,500.00, less as to each batch, the value of the life estate of the sister named as the recipient of the cash dividends for life.

On September 24, 1936, Nellie Catherine Runnells attained her 25th birthday, and the Western & Southern Life Insurance Company stock that had been held by the Trustee under the terms of the Mary E. Williams Trust was transferred and assigned one-half to her and one-half to her sister, Mary Josephine Runnells.

On June 24, 1942, Annie J. Williams died and the Western & Southern Life Insurance Company stock held by the Trustee in the Annie J. Williams Trust was disposed of in like manner.

Mary Josephine Runnells was married in 1932 to Charles J. Bacciocco and is the same person as the appellant Mary Jo Bacciocco. Nellie Catherine Runnells was married in 1939 to James B. O'Donnell, Jr., and is the same person as the appellant Nellie R. O'Donnell. Charles J. Bacciocco and James B. O'Donnell, Jr., are the successor-trustees in the three instruments of trust and are the appellants in the action involving the Clara W. Runnells Trust, which was still in existence in 1948.

On July 8, 1948, the shares owned by Mary Jo Bacciocco and the shares owned by Nellie R. O'Donnell had each increased to 30,000 shares by virtue of stock split-ups and stock dividends. Also, the original 400 shares in the Clara W. Runnells Trust had increased to 30,000 shares, which were held by the Trustee. On July 8, 1948, the Western & Southern Life Insurance Company was mutualized. On mutualization, Mary Jo Bacciocco, Nellie R. O'Donnell, and the Trustee of the Clara W. Runnells Trust

each received property of the stipulated value of $402,161.00 upon the disposition by each of their 30,000 shares through said mutualization.

In making income tax returns for the year 1948 the individual taxpayers and the Trustee reported the disposition of the respective 30,000 shares of stock for a gross price of $402,161.00, together with a basis of $36,000.00 for computing the gain therefrom, such figure being the basis of said stock in the hands of William J. Williams during his life. The gross long term capital gain reported by each set of appellants was, accordingly, $366,161.00, upon which income taxes were paid in each case, ranging between approximately $92,000.00 and $93,000.00.

Thereafter, in each instance the taxpayers and the Trustee took the position that the proper basis for determining the gain upon the disposition of the stock was the fair market value thereof at the date of the death of William J. Williams, namely, $300,500.00 instead of the sum of $36,000.00, as reported in the returns. Proceeding upon this basis, claims for refunds were duly filed by appellants Charles J. Bacciocco and Mary Jo Bacciocco in the amount of $70,231.05, by appellants James B. O'Donnell, Jr., and Nellie R. O'Donnell in the amount of $67,700.81, and by the Trustee of the Clara W. Runnells Trust in the amount of $67,476.33. The claims for refunds were denied and the three actions herein now under consideration were thereafter filed in the District Court.

The District Judge dismissed each of the three actions and these appeals followed.

Appellants rely upon Section 113(a) (5), Internal Revenue Code of 1939, 26 U.S.C.A., which provides in part as follows:

"Adjusted basis for determining gain or loss—'(a) Basis (unadjusted) of property. The basis of property shall be the cost of such property; except that

\* . , \* \* \* \* \*

"(5) Property transmitted at death. If the property was acquired by bequest, devise, or inheritance, or by the decedent's estate from the decedent, the basis shall be the fair market value of such property at the time of such acquisition. In the case of property transferred in trust to pay the income for life to or upon the order or direction of the grantor, with the right reserved to the grantor at all times prior to his death to revoke the trust, the basis of such property in the hands of the persons entitled under the terms of the trust instrument to the property after the grantor's death shall, after such death, be the same as if the trust instrument had been a will executed on the day of the grantor's death. \* \* \*"

They contend that the stock was acquired by them (1) by bequest and inheritance, and (2) the stock was acquired "by the decedent's estate from the decedent," within the meaning of the Section, and that its basis for determining the gain resulting from its disposition in 1948 was its fair market value when they acquired it upon the death of Williams in November 1930.

In our opinion, the stock was not acquired by the trust beneficiaries by "bequest" or "inheritance." We construe those terms according to their usual and normal meaning. They were not such heirs as would inherit under the Ohio statutes of descent and distribution. The beneficiaries acquired their title or interest in the stock by reason of the trust instruments, not by reason of any will. It is true that in Union Trust Co. v. Hawkins, 121 Ohio St. 159, 167 N.E. 389, 73 A.L.R. 190, the Supreme Court of Ohio stated that where the owner of property executes to another an instrument under or in connection with which he does not divest himself of the title to any of his estate but provides for the disposition of such property at or after his death, and it becomes operative to transfer the property only and at the time and by reason of his death, such in-

strument is testamentary in character. But, as pointed out in the later case of Cleveland Trust Co., Trustee v. White, 134 Ohio St. 1, 15 N.E.2d 627, 118 A.L.R. 475, this statement was unnecessary to the decision in the case, and was not approved or followed. In the Cleveland Trust Co. case it was held that a valid trust inter vivos is created when, under a trust agreement, the settlor transfers and delivers property to a trustee with the intention of passing title, and designated beneficiaries take immediate vested interests in such property, and such a trust in praesenti otherwise valid, is not rendered nugatory because the settlor reserves to himself certain rights and powers with respect to the trust, including the right to revoke the trust. See also the Court's more recent opinion in First National Bank of Cincinnati v. Tenney, 165 Ohio St. 513, 517–518, 138 N.E.2d 15, 61 A.L.R.2d 470. The trusts in question were not testamentary instruments.

With respect to their second contention, appellants point out that under the trusts Williams reserved to *himself* a reversionary interest in fee in the stock, in the event he survived the life tenant, and also a reversionary interest in his *estate*, in the event he predeceased the life tenant, subject to an estate for years in the Runnells children. With respect to the reversion to his *estate*, but not the reversion to himself, it was subject to being divested upon the happening of a contingency, namely, the existence of either of the two girls or the issue of either of them, on the 25th anniversary of the birthday of Nellie Runnells.

It is urged upon us that such a reversionary interest was a part of the assets of the estate of the decedent Williams, in that it was required by Ohio law to be included in the inventory of his estate, and was included in the decedent's gross estate for federal estate tax purposes, upon which such a tax was paid. Accordingly, it is argued the Runnells girls took only an expectancy, not an estate, which did not ripen into an estate until the death of Williams. Klein

v. United States, 283 U.S. 231, 51 S.Ct. 398, 75 L.Ed. 996; Helvering v. Hallock, 309 U.S. 106, 111, 60 S.Ct. 444, 84 L.Ed. 604; Spiegel's Estate v. Commissioner, 335 U.S. 701, 69 S.Ct. 301, 93 L.Ed. 330; Beach v. Busey, 6 Cir., 156 F.2d 496, 498. It is further argued that, since the reversionary interest was an asset of Williams' estate, the stock was acquired "by the decedent's estate from the decedent" within the meaning of the statute.

We agree with the District Judge in his rejection of this argument, who characterized it as a strained analysis of the facts. The cases above referred to hold that for the purposes of the federal estate tax statute, such a reversionary interest, even though contingent, was included in the gross estate of the decedent under the wording and purpose of that statute. But we do not construe those cases as holding that the estate acquired title to the property and that a contingent remainderman did not acquire an interest in the property under the instrument until after the elimination of the contingency. The interest of the remainderman may be contingent; it may be labeled by some as an "expectancy;" it may have certain characteristics which differentiate it from the usual vested remainder; but it is an interest in the trust property created by the trust instrument, which is not eliminated from consideration because there is a possibility that it may never ripen into a vested interest. Helvering v. Campbell, 313 U.S. 15, 21–22, 61 S.Ct. 798, 85 L.Ed. 1159; Helvering v. Reynolds, 313 U.S. 428, 433–434, 61 S.Ct. 971, 85 L.Ed. 1438. Nor is such an interest to be treated as not existing in the remainderman because it is included for federal estate tax purposes as part of the decedent's estate. The instrument passes an interest, even though contingent, to the remainderman grantee. By reason of the fact that the property may revert to the decedent, it is also subject to taxation under the federal estate tax statute. The two results are not mutually exclusive. Smith v. Shaughnessy, 318 U.S. 176, and cases cited in note 6 on page 181, 63 S.Ct.

545, at page 548, 87 L.Ed. 690; Pierson v. Commissioner, 3 Cir., 253 F.2d 928, 931.

The taxpayers acquired the stock, not through decedent's estate, but under the provisions of the trust instruments. Decedent's death did not transfer the stock from decedent's estate to the taxpayer. It merely was the happening of an event, picked by the creator of the trust, which eliminated the possibility of taxpayers' interests in the stocks not vesting. Whatever interest the taxpayers eventually owned was acquired under the provisions of the trusts.

Appellants' argument also ignores the practical facts that neither the decedent nor decedent's estate "acquired" the stock after the creation of the trusts. The reversionary interests of the decedent and of his estate were contingent upon the happening of certain events. These events never happened, and decedent's estate never "acquired" the stock from anybody.

We find no merit in appellants' further contention that the trusts fall within the provisions of Section 113(a) (5) of the Internal Revenue Code, in that it is a case of property having been "transferred in trust to pay the income for life to or upon the order or direction of the grantor, with the right reserved to the grantor at all times prior to his death to revoke the trust." The trusts herein involved did not reserve to the grantor the right to revoke the trusts and we do not construe a contingent reversion in favor of the grantor to be the same as a right to revoke. Helvering v. Wood, 309 U.S. 344, 347, 60 S.Ct. 551, 84 L.Ed. 796. Even if the reversion became a vested interest and terminated the trusts, it did not have that effect "at all times prior to his death," as required by the statute.

Accordingly, the cost basis of the stock in appellants' hands is not controlled by Section 113(a) (5) of the Internal Revenue Code and cannot be given its reasonable market value as of the date of Williams' death on the theory that it was acquired by the beneficiaries at that time. On the contrary, it is controlled by Section 113(a) (2) which provides that if the property was acquired by gift after December 31, 1920, the basis shall be the same as it would be in the hands of the donor or the last preceding owner by whom it was not acquired by gift. Appellants acquired the stock by gift at the time of the creation of the trusts, even though it was through the medium of a trust and in the nature of a contingent remainder. Smith v. Shaughnessy, supra, 318 U.S. 176, 181, 63 S.Ct. 545. The Commissioner was not in error in fixing the basis as the value of the stock in the hands of the donor at the time when the gift was made, although it was not until later that the gift ultimately ripened into complete ownership. Helvering v. Campbell, supra, 313 U.S. 15, 22, 61 S.Ct. 798; Helvering v. Reynolds, supra, 313 U.S. 428, 433–434, 61 S.Ct. 971.

The judgment of the District Court is affirmed.